**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose P. FLORESCA, Defendant–Appellant.**

**No. 92–5447.**

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1994.

Decided Oct. 27, 1994.

ARGUED: Hunt L. Charach, Fed. Public Defender, Charleston, WV, for appellant. Larry Robert Ellis, Asst. U.S. Atty., Charleston, WV, for appellee. ON BRIEF: Leonard Kaplan, Asst. Fed. Public Defender, Charleston, WV, for appellant. Michael W. Carey, U.S. Atty., Michael L. Keller, Asst. U.S. Atty., Jennifer L. Gerlach, Third–Year Law Student, Lori A. Simpson, Third–Year Law Student, West Virginia Univ. College of Law, Charleston, WV, for appellee.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge,* sitting en banc.

Reversed and remanded by published opinion. Judge HALL wrote the opinion of the Court, in which Chief Judge ERVIN, and Judges WIDENER, MURNAGHAN, HAMILTON and MICHAEL concurred. Judge WIDENER wrote a separate concurring opinion. Judge RUSSELL wrote a dissenting opinion in which Judges WILKINSON, WILKINS, NIEMEYER and WILLIAMS joined.

## OPINION

K.K. HALL, Circuit Judge:

Following a jury trial, Jose Floresca was convicted of several offenses arising from his professional conduct as a physician. Floresca wrote false prescriptions for controlled substances, gave the prescriptions to others to have them filled, and then unlawfully resold them. He was also convicted of witness tampering. Floresca appealed the latter conviction, for which he was sentenced to 45 months in prison. The parties filed briefs and argued before a panel of this court. Prior to the issuance of a decision, however, a majority of the court voted to rehear the case *en banc*. We now reverse Floresca's conviction for witness tampering and remand for resentencing on the remaining counts.

### I.

Floresca, born in the Philippines but now a citizen of the United States, operated a clinic in Beckley, West Virginia. In 1987, he hired his lifelong friend, Romeo Lopez, to perform simple tasks around the office.

In April 1991, Floresca wrote some "straw" prescriptions for Fastin and Tylox,[1] both Schedule II controlled substances.[2] He gave the prescriptions to various persons, including Lopez, along with money to have the prescriptions filled. Lopez and the others obtained the drugs and returned them to Floresca, who then resold them at a profit. Both Floresca and Lopez were indicted as a result of the government's investigation into the scheme, but the indictment against Lopez was dismissed in exchange for his testimony against Floresca.

While the trial was pending, Lopez continued to work at Floresca's clinic. On several occasions, Floresca allegedly tried to dissuade Lopez from testifying. As a result, Floresca was charged in Count Nine of a superseding indictment with witness tampering, in violation of 18 U.S.C. § 1512(b)(1).[3]

---

* Judge Phillips heard oral argument in this case, but took senior status and was ineligible to participate in the decision.

1. Fastin is the trade name for phentermine hydrochloride, an amphetamine. Medical Economics Data, Medical Economics Co., Inc., *Physician's Desk Reference* 2305 (1993). Tylox is the trade name for oxycodone hydrochloride compounded with acetaminophen, a painkiller with morphine-like properties. *Id.* at 1431.

2. *See* 21 U.S.C. § 812(c) (West 1994).

3. Paragraph D of Count Nine charged that Floresca "engaged in a continuing course of conduct to threaten, intimidate, and mislead [Lopez] with intent to influence, delay, and prevent [his] testimony ... in an official proceeding." Subsequent paragraphs described the particulars of Floresca's alleged misdeeds. Paragraph E accused Floresca of telling Lopez that, if Floresca was convicted and imprisoned, Lopez would also go to jail. Paragraph F stated that Floresca had tried to persuade Lopez to tell the latter's attorney and the authorities that Floresca had not given him any false prescriptions to fill. Paragraphs G and H maintained, respectively, that Floresca had threatened to harm Lopez's son (still living in the Philippines) and to "take steps" to have Lopez deported if Lopez testified against him.

At trial, in addition to giving evidence against Floresca on the drug charges, Lopez recounted Floresca's attempts to prevent him from cooperating with the government. Lopez's testimony was the sole source of the government's evidence against Floresca regarding Count Nine.

■ At the close of the evidence, the court read to the jury the applicable language of Section 1512(b) through the end of Paragraph (1)—the paragraph alleged by the indictment to have described the objective of Floresca's tampering. However, instead of instructing the jury on the meaning of the language of the paragraph that it had just read, the district court, at the government's request and without objection, instructed the jury on the essential elements of the subsection's third enumerated paragraph. *See* note 3, *supra.*[4]

The jury convicted Floresca of seven drug-related counts and of Count Nine. Floresca appeals only the latter conviction, arguing that the court committed plain error by instructing the jury that it could convict him of

a different crime than the one for which he was indicted, thereby violating his Fifth Amendment right to a grand jury indictment.[5]

## II.

We begin by analyzing what the district court did when it instructed the jury on Paragraph 3 instead of Paragraph 1. The question is whether the district court's action is appropriately classified as a variance, a failure to instruct on an essential element of the charged offense, or a constructive amendment of the indictment.

■ Instructing the jury on Paragraph 3 did not create a variance. A variance occurs when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of the defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed.[6] Once a reviewing court determines that the facts incorrect-

The last sentence of Count Nine, referring to the allegations contained in the above-described paragraphs, stated that they were "ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, § 1512(b)(1)." Section 1512, in essence, generally proscribes tampering with a federal criminal investigation or subsequent proceeding. Subsection (b) of the statute describes several means of tampering that are prohibited when committed for the purpose of accomplishing certain delineated objectives. The forbidden objectives are enumerated in three separate paragraphs; however, only the first and third objectives are relevant to the instant case. The pertinent portions read:

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1) influence, delay, or prevent the testimony of any person in an official proceeding;
    \*    \*    \*    \*    \*    \*
or
(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

4. After requesting the instruction on Paragraph 3, the government compounded the confusion in

its closing argument, stating that "we must prove to you beyond a reasonable doubt that [Floresca] committed acts for the purpose of imposing upon a potential witness and having them [sic] give misleading or false information in the *investigation* in this case."

5. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. amend. V. Though the Grand Jury Clause applies with full force to federal prosecutions like Floresca's, it is one of the few Bill of Rights protections that does not apply to the states. *See Wilson v. Lindler,* 8 F.3d 173, 174 (4th Cir.1993) (en banc), *cert. denied,* — U.S. —, 114 S.Ct. 1101, 127 L.Ed.2d 414 (1994) (citing *Hurtado v. California,* 110 U.S. 516, 534–35, 4 S.Ct. 111, 120–21, 28 L.Ed. 232 (1884)).

6. *See, e.g., United States v. Kimberlin,* 18 F.3d 1156, 1158–59 (4th Cir.1994) (strict chronological specificity or accuracy in the indictment is not required where a particular date is not a substantive element of the crime charged); *United States v. Morrow,* 925 F.2d 779, 781–82 (4th Cir.1991) (in a prosecution for possession of a firearm by a convicted felon, a variance between the indictment and the proof resulting from the indictment's omission of the first digit of the firearm's serial number went only to form, not to substance, and did not reduce the government's burden of proof).

ly noted in the indictment do not concern an issue that is essential or material to a finding of guilt, the focus is properly upon whether the indictment provided the defendant with adequate notice to defend the charges against him.[7] No variance occurred in Floresca's case because Lopez's testimony adhered to the facts alleged in Paragraphs E—H of the indictment. *See* note 3, *supra.*[8]

     Likewise, though the district court plainly failed to instruct the jury on Paragraph 1, its action cannot be classified as a "mere" failure to instruct. The charge to Floresca's jury on the essential elements of Count Nine was flawed, not only by the absence of the proper instruction, but also by the presence of a misinstruction—and no ordinary misinstruction at that. The court's instruction on Paragraph 3 was more than just a misstatement of the law applicable to the indicted offense; it stated a distinct, unindicted offense.[9] It was by no means only a "slight defect in the charge [that] could be cured by other circumstances." *United States v. Polowichak,* 783 F.2d 410, 416 (4th Cir.1986).

     We conclude that the district court's misinstruction resulted in an amendment to the indictment. A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.[10]

Whether particular conduct constitutes constructive amendment has elicited a fair amount of comment, in this circuit as well as in others. *See, e.g., United States v. Bledsoe,* 898 F.2d 430 (4th Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990); *Moore v. United States,* 512 F.2d 1255 (4th Cir.1975). While the dissent relies in significant part on *Moore* and *Bledsoe* to determine that there was no constructive amendment in this case, we decline to do so, for the following reasons.

In *Moore,* the defendant was convicted of possessing a prohibited firearm in violation of 26 U.S.C. § 5861. The indictment charged that Moore possessed a sawed-off 12–gauge shotgun, as prohibited by 26 U.S.C. § 5845(d), but the evidence proved instead that he possessed a flare gun that was modified to fire 12–gauge shells, a weapon prohibited under 26 U.S.C. § 5845(e). The jury was charged under § 5845(e). The panel held that the misdescription in the indict-

---

7. *Kimberlin,* 18 F.3d at 1159; *Morrow,* 925 F.2d at 781 (quoting *United States v. Holt,* 529 F.2d 981, 983 (4th Cir.1975), and noting that, in determining whether an accused has been prejudiced by a variance, the "primary consideration" is not just whether he has received adequate notice in the indictment of the charges against him, but also whether the context of the crime has been described with sufficient particularity to protect him against another prosecution for the same offense).

8. The dissenters maintain that three words in Paragraph F of Count Nine ("FLORESCA told [Lopez] to falsely tell [Lopez's] attorney *and the authorities* that defendant FLORESCA never gave [Lopez] the prescription for thirty (30) dosage units of phentermine ....") somehow charged Floresca with a violation of Paragraph 3 in addition to Paragraph 1, and that the indictment's failure to cite Paragraph 3 along with Paragraph 1 at the end of Count Nine was merely a typographical error. *Post,* at 717. The government has made no such argument. Indeed, to its credit, the government has not contended that it *ever* sought to indict Floresca for violating Paragraph 3.

9. Because each describes a different objective of an unlawful tampering, requiring the government to prove a different specific intent, it is evident that Paragraphs 1 and 3 are separate crimes.

10. *See Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960) (citing *Ex Parte Bain,* 121 U.S. 1, 9–10, 7 S.Ct. 781, 785–86, 30 L.Ed. 849 (1887)); *see also United States v. Miller,* 471 U.S. 130, 138–40, 105 S.Ct. 1811, 1815–17, 85 L.Ed.2d 99 (1985) (overruling *Bain,* but only to the extent that its rule would support nullifying an indictment that had been *narrowed* by amendment: "[W]e do not limit *Bain*'s more general proposition concerning the impermissibility of *actual additions* to the offenses alleged in an indictment, a proposition we have repeatedly reaffirmed." (emphasis supplied)). For clarity's sake, we must point out that where the government's presentation at trial does not broaden the legal bases for conviction by allowing the jury to consider a different or less specific offense, but instead fails to establish as fact an essential element of the indicted offense, the proper challenge on appeal is to the sufficiency of the evidence.

ment was surplusage and affirmed the conviction. But *Moore* is indistinguishable from this case: Floresca was indicted under section 1512(b)(1) but the jury was charged under and he was convicted under section 1512(b)(3). Because both of these departures from the offense as indicted constitute clear examples of constructive amendment, we reject the rule of *Moore* and overrule that case. The dissent's reliance on *Moore* is thus misplaced.

The *Bledsoe* case, although related, is distinguishable on its facts. In that case, the defendant was indicted for selling cocaine within 1000 feet of a "public school," in the words of the statute, which made criminal the selling of such a drug within 1000 feet of either a "public or private" school. Upon being advised that the government could not prove that Bledsoe sold cocaine within 1000 feet of a public school because he had in fact sold the drug within 1000 feet of a private parochial school, the district court simply struck the word "public" from the indictment. The panel affirmed this conduct of the district court, finding that the word "public" was surplusage because all schools are either public or private and thus within the statute.

Because *Bledsoe* is on different facts than the instant case, we are of opinion that it would be inappropriate to overrule it as circuit precedent. We do, however, limit the *Bledsoe* case to its facts, *see Rutkin v. United States*, 343 U.S. 130, 138, 72 S.Ct. 571, 576, 96 L.Ed. 833 (1952) (declining to overrule a distinguishable precedent, but limiting that precedent to its facts). Not only do we limit *Bledsoe* to its facts as precedent, to the extent that *Bledsoe* is inconsistent with our holding today, it is no longer authority in this circuit. *See United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982) (finding that prior cases were inconsistent with the Court's holding, but overruling them only to the extent necessary to reconcile them). Thus, *Bledsoe* does not control our holding in this case.

■ In short, we hold that what transpired at Floresca's trial amounted to nothing less than a constructive amendment of the indictment. The jury was allowed to return a guilty verdict upon finding that Floresca approached Lopez with the intent to affect *either* his cooperation in the investigation *or* his testimony at trial. This resulted in a broadening of the bases for Floresca's conviction. We stress that it is the broadening itself that is important—nothing more. It matters not, if a constructive amendment has occurred, whether the factfinder could have concluded (as it surely could have based on reasonable inferences arising from Lopez's testimony) that Floresca intended to influence both the investigation and his trial.[11] Though this is a case of first impression in this circuit, all of our sister circuits have consistently interpreted *Stirone*, note 10, *supra*, to mean that a constructive amendment of the indictment constitutes error *per se*.[12] Plainly and simply, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone*, 361 U.S. at 217, 80 S.Ct. at 273.

In the usual case, where the error has been properly preserved, this rule requires a reviewing court to conclusively presume that the defendant has been prejudiced by the constructive amendment and to forgo harmless error analysis.[13] We believe that such an approach is patently correct, and we are

---

11. We therefore reject Floresca's challenge to the sufficiency of the evidence regarding the objective of the alleged tampering.

12. *See, e.g., United States v. Dunn*, 758 F.2d 30, 36 (1st Cir.1985); *United States v. Zingaro*, 858 F.2d 94, 103 (2nd Cir.1988); *United States v. Somers*, 496 F.2d 723, 744 (3rd Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. Young*, 730 F.2d 221, 223 (5th Cir.1984); *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986); *United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir.1991); *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir.1984);

*United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984); *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988); *United States v. Figueroa*, 666 F.2d 1375, 1379 (11th Cir.1982); *United States v. Lawton*, 995 F.2d 290, 292 (D.C.Cir.1993).

13. *See Stirone*, 361 U.S. at 217, 80 S.Ct. at 273 ("Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.").

happy to make it unanimous among the circuits.

## III.

However, because we brush our strokes on the canvas of plain error review, *see* Fed. R.Crim.P. 52(b), we analyze Floresca's case within the strictures of the Supreme Court's recent decision in *United States v. Olano,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Olano,* the Supreme Court defined plain error as (1) error (2) that is plain and (3) affects substantial rights. *Id.* at —— – ——, 113 S.Ct. at 1776–78. A reviewing court should exercise its discretion to correct plain error if a fourth condition is met—when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

### A.

We apply *Olano* although it is by no means clear that we should. We believe that, because constructive amendments are not subject to review for harmlessness, the Supreme Court would consider them to be "structural defects" in the trial mechanism. *See Sullivan v. Louisiana,* — U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (holding that the deprivation of a defendant's Sixth Amendment right to trial by jury is a structural defect, not amenable to harmless error analysis). In *Sullivan,* Justice Scalia reasoned that the question of whether the defendant's jury would have reached the *same* verdict absent a constitutionally deficient reasonable doubt instruction was "utterly meaningless" inasmuch as the deficiency caused the jury to have never reached a constitutional verdict *to begin with. Id.* at ——, 113 S.Ct. at 2082. In Floresca's case, it is "utterly meaningless" to posit that any rational grand jury *could* or *would* have in-

dicted Floresca under Paragraph 3, because it is plain that this grand jury *did not,* and, absent waiver, a constitutional verdict cannot be had on an unindicted offense.

It is entirely conceivable that the above analysis ends this case. It is an open question as to whether the absence of an objection requires further analysis when the alleged error goes to the heart of the entire judicial process. However, it is arguable that the *Olano* Court had exactly those kinds of structural defects in mind when it mentioned the potential existence of a "special category" of errors not requiring a specific showing of prejudice. *See* note 16, *infra,* and accompanying text.

If *that* is true, however, the Court also contemplated, in announcing the fourth *Olano* factor, that a reviewing court would have the discretion to deny relief in such a case—though we have difficulty imagining a structural defect that does *not* "seriously affect the fairness, integrity, or public reputation of judicial proceedings." Indeed, it is precisely because we reach the same result in Floresca's case under either approach that we need not resolve this question today.[14]

### B.

It is indisputable that the constructive amendment of Floresca's indictment was error. Likewise, there can be no question but that the error was plain—obvious enough to require the district court to correct it. There *should* be no question that the error affected Floresca's substantial right to grand jury indictment—after all, the Supreme Court has already said that it does: a constructive amendment "destroy[s] the defendant's *substantial right* to be tried only on charges presented in an indictment returned by a grand jury." *Stirone,* 361 U.S. at 217, 80 S.Ct. at 273. "The right to have the grand jury make the charge on its own judgment is a *substantial right* which cannot be taken away with or without court amend-

---

**14.** In *United States v. Colon–Pagan,* 1 F.3d 80 (1st Cir.1993), a plain error case, Chief Judge Breyer, writing for the panel, expressed his views on the matter. He concluded that a constitutionally deficient reasonable doubt instruction, albeit a structural defect under *Sullivan,* is nevertheless

subject to *Olano*'s four-factor test. *Id.* at 81. The District of Columbia Circuit has adopted the same rule. *See United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.1994); *United States v. Merlos,* 8 F.3d 48, 50–52 (D.C.Cir.1993); *Lawton,* note 12, *supra.*

ment." *Id.* at 218–19, 80 S.Ct. at 274 (emphases supplied).

That a constructive amendment always "affects substantial rights" is also clear by reading the plain language of Rule 52 in light of *Stirone.* Rule 52(a) squarely defines harmless error as error that does *not* affect substantial rights.[15] Because the *Stirone* Court held that the error occasioned by constructive amendments can *never* be harmless, *see* note 13, *supra,* it follows that such errors *must* affect substantial rights.

There is nothing in *Olano* to the contrary. Though *Olano* obviously stands for the rule that a defendant must ordinarily demonstrate that he has been prejudiced by the error in order to prevail, it is equally evident that the *Olano* Court contemplated that there would be exceptions to that rule. "There may be a special category of forfeited errors that can be corrected *regardless* of their effect on the outcome...." *Olano,* —— U.S. at ——, 113 S.Ct. at 1778 (emphasis supplied).[16] Thus, while interpreting *Stirone* to mean what it says—that an inquiry into prejudice is not appropriate where a constructive amendment has occurred—is entirely consistent with *Olano,* interpreting

*Olano* to require a showing of prejudice in *every* case essentially overrules *Stirone.* The Supreme Court has not overruled *Stirone,* and we may not.[17]

We now arrive at the final step of the *Olano* analysis—whether the error occasioned by the constructive amendment seriously affected the fairness, integrity or public reputation of judicial proceedings, thus justifying the exercise of our discretion to create a remedy absent an objection. To begin with, we note that we must once again leave unfulfilled the desire, born of reflex and not of contemplation, to inject a prejudice component into our analysis.[18] Such a consideration may be appropriate and weigh in a defendant's favor in a case where he is required to demonstrate actual prejudice in order to satisfy the third prong—and succeeds in doing so. However, in a case like Floresca's, where the error amounts to a structural defect that renders irrelevant, *ab initio,* the question of prejudice, logic requires us to instead focus on the nature of the error itself.

At bottom, Floresca was held accountable in a federal court for an "infamous-crime" for

15. Rule 52(a) states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

16. "[I]n *most* cases, [the phrase 'affecting substantial rights'] means that the error must have been prejudicial.... We need not decide whether the phrase 'affecting substantial rights' is *always* synonymous with 'prejudicial'.... Normally, *although perhaps not in every case,* the defendant must make a specific showing of prejudice...." *Id.* (emphases supplied). *See also Colon–Pagan,* note 14, *supra* (noting *Olano*'s acknowledgement that prejudice need not be demonstrated in every case). "We need not consider the strength of the evidence, therefore, in order to hold that the erroneous instruction 'affect[ed] substantial rights.'" *Id.*

In addition to those errors requiring the defendant to show prejudice and that "special category of forfeited errors" that automatically satisfy the third *Olano* factor (the category to which we believe that the error in this case belongs), Justice O'Connor's opinion mentions what appears to be a third type of error that should be "presumed prejudicial" absent a specific showing of prejudice. *Id.* Because the presence of a presumption ordinarily entails the opportunity for rebuttal, it should be clear that constructive amendments, given *Stirone*'s unequivocal holding

that such errors can *never* be declared harmless, do not fall into this last category.

17. Though several Court decisions subsequent to *Stirone,* beginning with *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), have ruled certain constitutional violations to be amenable to harmless error analysis, constructive amendments have never been included among their number, and *Stirone* has never been overruled, either explicitly or implicitly.

18. Again, such an approach in no way runs afoul of Supreme Court precedent. Though the *Olano* Court stated that a reviewing court should employ its discretion to correct plain errors "in those circumstances in which a miscarriage of justice would otherwise result," *Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (*citing United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (internal citation omitted)), meaning that the defendant is actually innocent, it also stated that "we have never held that a Rule 52(b) remedy is *only* warranted in cases of actual innocence.... An error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* The lesson here, of course, is that the term "miscarriage of justice" is *not* the equivalent of "miscarriage of result."

which he was never indicted by a grand jury. We do not hesitate to say that convicting a defendant of an unindicted crime affects the fairness, integrity, and public reputation of federal judicial proceedings in a manner most serious.

By including the Grand Jury Clause in the Bill of Rights, the Framers—mindful of the intimidating force and presence of a strong national government and the potential for abuse of that force—recognized the need to interpose a group of common local citizens between the accused and the sovereign. The purpose of the grand jury, if nothing else, is to check individual abuses of the official power to initiate a prosecution. Our founding fathers realized that the grand jury is vital in preventing prosecutions grounded solely in spite, revenge, or difference in political philosophy. We believe that the wisdom of the Framers in this regard has stood the test of time; thus, depriving an accused of the protection of the grand jury would be, no less today than yesterday, intolerably unfair.[19]

"Integrity" has been defined as, among other things, "firm adherence to a code." Webster's *New Collegiate Dictionary,* 600 (5th ed.1977). For over two hundred years, persons accused of a federal crime have had an absolute constitutional right to a grand jury indictment. *Stirone* itself was, of course, an affirmation of that right in the strongest possible terms. In the law, one of our most time-honored codes is that of *stare decisis,* present in this case both by virtue of the unequivocal language of the Constitution, and by *Stirone*'s condemnation, now over thirty years past, of *ever* sustaining a conviction for an unindicted crime. No court could choose to consciously ignore all that has gone before while simultaneously maintaining the integrity of the law.

As to the effect that convicting a person of an unindicted offense might have on the public reputation of federal judicial proceedings, we do not doubt that there are a significant number of citizens who—though ignorant of their own state constitution's criminal procedure requirements, or perhaps even unaware that their state has a constitution—are keenly cognizant of the need for a grand jury indictment in a federal prosecution. We are certain that such citizens, not to mention those better versed in the law, would be outraged if the federal courts suddenly decided, by fiat, to start conducting trials without first having a grand jury consider the government's evidence. To embark on such a course would gravely threaten the very legitimacy of the federal tribunals.

■ In sum, we hold that, under *Stirone,* constructive amendments of a federal indictment are error *per se,* and, under *Olano,* must be corrected on appeal even when not preserved by objection.[20] Because Floresca's indictment was constructively amended at trial, we reverse his conviction on Count Nine and remand the case to the district court for further proceedings consistent with this opinion.[21]

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge, concurring:

I concur in the opinion of Judge Hall as well as in the result.

Left to my own devices, I would not engage in any harmless error analysis, for I think that is unnecessary.

DONALD RUSSELL, Circuit Judge, dissenting:

The majority elevates a harmless variance to a constructive amendment of the indict-

---

**19.** *See also Colon–Pagan,* note 14, *supra* ("a criminal trial marred by a 'structural defect ... cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment [resulting from such a trial] may be regarded as *fundamentally fair,*'" quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (internal citation omitted) (emphasis in Chief Judge Breyer's opinion)).

**20.** We note finally that our holding is consistent with the result in *Lawton, see* note 12, *supra,* a

post-*Olano* case reversing, for plain error, the defendant's federal conviction for embezzlement based on a constructive amendment of the indictment.

**21.** Our reversal of the underlying conviction renders it unnecessary to address Floresca's contention that the district court misapplied § 2J1.2(b)(1) of the Sentencing Guidelines by adding eight points to his offense level, resulting from its finding that Floresca threatened to cause physical injury to Lopez's son in order to prevent Lopez from testifying.

ment. It then announces that a constructive amendment mandates reversal of a criminal conviction *per se*, even where there is no objection below, thereby embracing a *per se* rule of plain error. On this basis, the majority orders Floresca's conviction under 18 U.S.C. § 1512 reversed.

The majority's reasoning is flawed in several respects. First, a proper analysis confirms that the error in this case is not a constructive amendment of the indictment, but a variance, and a harmless variance at that. Second, even assuming that there was a constructive amendment below, the majority's application of a *per se* plain error rule flies in the face of recent relevant Supreme Court precedent, particularly *United States v. Olano*, ⎯⎯ U.S. ⎯⎯, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Application of the proper plain error standard dictates that the conviction below be affirmed. I, therefore, respectfully dissent.

## I.

The statute at issue in this case, 18 U.S.C. § 1512(b), provides, in pertinent part:

Whoever knowingly uses intimidation or physical force, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence, delay or prevent the testimony of any person in an official proceeding; [or to]

\* \* \* \* \* \*

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(b)(1), (3).

Count nine of the indictment against Floresca is entitled: "WITNESS TAMPERING [TITLE 18, U.S.C. SECTION 1512]".

J.A. 35. While paragraph D of count nine charges Floresca with "engag[ing] in a continuing course of conduct to threaten, intimidate, and mislead [Lopez] with intent to influence, delay, and prevent the testimony of [Lopez] in an official proceeding," J.A. 35, conduct prohibited under section 1512(b)(1); paragraph F of the count charges that, as "a part of this continuing course of conduct ... defendant JOSE P. FLORESCA told [Lopez] to falsely tell [his] attorney *and the authorities* that defendant FLORESCA never gave [Lopez] the prescription for thirty (30) dosage units of phentermine, also known as 'Fastin' described in Count One of the September 5, 1991 indictment and in paragraphs J, K and L of Count One of this present indictment," J.A. 36 (emphasis added), conduct prohibited under section 1512(b)(3). Thus, the indictment gave notice to Floresca that the evidence would show violations of 18 U.S.C. § 1512(b)(1) *and* (b)(3). However, count nine concludes by stating that Floresca had conducted the activities alleged therein "ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, § 1512(b)(1)." J.A. 37.

The evidence presented at trial on the subject of Floresca's intimidation of Lopez consisted entirely of the testimony of Lopez, who was indicted with Floresca but entered into a plea bargain with the government in return for his testimony. Lopez testified that, following his indictment, but prior to his discussing a plea bargain with the government, "[Floresca] started to argue with me about my legality coming here to the United States, that I'm illegal coming in the states and my marriage is bad. [sic]" J.A. 244. Lopez further testified that, after he had consulted with his lawyer,

[Floresca] started telling me these things that I was illegal. And when I argue with him, he started, he started to talk about he got a lot of friends in Manila airport and he can call them and order them to do something with a person and he knows my son is coming here [from the Philippines]. [sic]

J.A. 244–45. Thereafter Lopez's lawyer instructed Lopez to inform Floresca that he could no longer discuss the case with him.

Lopez testified that, when he told Floresca this, "[Floresca] tried to harass me; tell me that he goes to jail, I go to jail. [sic]" J.A. 245.

Lopez then entered into a plea bargain with the government and was wired with a taping device. Lopez testified that Floresca never again orally threatened him, but did testify:

Q Did Dr. Floresca ever communicate with you about this case other than orally, other than by mouth?

A One time when I wear this tape, he write on a small paper a, toilet paper or, paper towel, paper towel.

Q Did you see what he wrote on there?

A Yes, sir.

Q What did he write?

A "Don't plea bargain. If you plea bargain, you are in their mercy."

J.A. 247.[1]

On cross-examination, Floresca's attorney, in an attempt to show that Floresca's statements were not threats, established that Lopez's marriage was legal and that Lopez is a citizen of the United States. He also established that Lopez had captured none of Floresca's threats on tape, and that, because Floresca had not allowed him to keep the paper upon which the written threat had appeared, Lopez could not substantiate this claim.

Although the statutory provision cited in the indictment, section 1512(b)(1), prohibits threats that interfere with testimony at an official proceeding, the district court, without objection, charged the jury that it should find Lopez guilty if Floresca made threats to interfere with Lopez's communications with law enforcement officials.[2] The majority concludes that the district court's error,

which the majority describes as a constructive amendment of the indictment, was plain error that entitles Floresca to reversal of his conviction for violation of section 1512.

## II.

Contrary to the conclusion drawn by the majority, there was no constructive amendment of the indictment in this case.

Constructive amendments and variances both arise from similar situations: where the facts or underlying theory of criminality alleged in the indictment vary, as a result of the introduction of evidence, argument by the government, or the district court's jury instructions, from the facts or underlying theory of criminality established at trial. A constructive amendment occurs where, as a result, "the possible bases for conviction" are broadened beyond the bases appearing in the indictment. *United States v. Miller*, 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985). A variance, by contrast, occurs where a broadening of the bases for conviction does not result. *See id.* at 145, 105 S.Ct. at 1819–20.[3]

A broadening of the bases for conviction occurs where the defendant is convicted of a crime not passed upon by a grand jury. *See id.* at 138–39, 105 S.Ct. at 1815–17; *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Under this definition, it is clear that, where the elements of the crime for which a defendant is ultimately convicted are set out in the indictment and where the evidence at trial establishes only facts that were alleged in the indictment, there is no broadening of the bases for conviction and, consequently, the only error that may arise is a variance. *See United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir.1991) ("Construc-

---

1. Accepting this testimony as truthful, Floresca was apparently unaware that Lopez had already entered into a plea bargain.

2. The district judge read the text of the statutory provision cited in the indictment, section 1512(b)(1), to the jury, but in her explanation of the elements of the offense charged, instructed only as to section 1512(b)(3).

3. The question of whether the error herein was a constructive amendment or a variance looms

large because a variance can be viewed as harmless error, *see United States v. Brewer*, 1 F.3d 1430, 1437 (4th Cir.1993), while a constructive amendment cannot, *see Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). For this reason, the determination of whether the error in a particular case is a variance or a constructive amendment should not lightly be undertaken. *United States v. Flynt*, 15 F.3d 1002, 1005 (11th Cir.1994).

tive amendment consists of alteration of an indictment by (1) presentation of evidence, and (2) jury instructions[,] both of which work to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."); *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir.1986) ("A constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."). Thus, as one leading treatise has commented, the classification of constructive amendments "has been limited to cases in which the prosecution presents a complex of facts distinctly different from that set forth in the charging instrument." 3 Charles Alan Wright, *Federal Practice and Procedure* § 516, at 27 (2d ed.1982) (footnotes omitted). *See United States v. Massuet,* 851 F.2d 111, 116 (4th Cir.1988) ("In contrast with the situation disclosed by *Stirone,* the government did not attempt to offer any evidence in support of any other charge."), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 776 (1989); *Jackson v. United States,* 359 F.2d 260, 263 (D.C.Cir.) (distinguishing *Stirone* from the case then at bar on the basis that, "[i]n *Stirone* the prosecution was relying at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment," while, "in the case before us, there is a single set of facts"), *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966); *accord United States v. Knuckles,* 581 F.2d 305, 312 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

We need not further define the contours of the boundary between variances and constructive amendments for the case at bar fits squarely into the situation described above. Floresca's conviction can be seen to lie under section 1512(b)(1) or section 1512(b)(3). With respect to section 1512(b)(1), the indictment specifically cited that provision, set out

the elements of that provision, and alleged facts meeting each element of the provision and therefore constituting a violation of that provision. With respect to section 1512(b)(3), count nine of the indictment charged that "defendant JOSE P. FLORESCA told [Lopez] to falsely tell [his] attorney *and the authorities* that defendant FLORESCA never gave [Lopez] the prescription for thirty (30) dosage units of phentermine," J.A. 36 (emphasis added). Thus, the indictment set out the elements of section 1512(b)(3) and alleged facts meeting the elements of that provision and therefore constituting a violation of that provision.

The only arguable error was that the indictment contained no citation to section 1512(b)(3). However, an indictment that provides an incorrect or incomplete citation creates merely a variance, which, absent prejudice, is harmless. As we explained in *United States v. Duncan,* 598 F.2d 839, 854 n. 11 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979),

> [T]he citation of a statutory provision in an indictment is solely for the benefit of ... defendants; its inclusion is intended to better apprise the defendant of the charges against him without danger to the prosecution. Fed.R.Crim.P. 7, Notes of the Advisory Committee. The rule has long been that a conviction may be sustained on the basis of a statute other than that cited in the indictment. *E.g., Williams v. United States,* 168 U.S. 382, 389, 18 S.Ct. 92 [94–95], 42 L.Ed. 509 (1897). Miscitation of the statute is harmful error only if prejudice to the defendant can be shown. Fed.R.Crim.P. 7(c)(3).

*Accord United States v. Massuet, supra,* 851 F.2d at 116 ("If the indictment had included the exact language which it did but cited section 841(a)(1) instead of section 959(b)(2) or even no statute at all, it would have been valid and any challenge against it would have failed."). There was, then, no constructive amendment of the indictment whether Floresca was convicted under section 1512(b)(1) or section 1512(b)(3).[4]

---

4. If Floresca was convicted under section 1512(b)(1), then there was a failure to instruct

the jury as to an essential element of the crime

The majority contends that this case is "indistinguishable" from *Moore v. United States*, 512 F.2d 1255 (4th Cir.1975). *Ante,* at 710. An examination of *Moore* belies this contention. In *Moore,* the defendant was indicted for violating 26 U.S.C. § 5861(d). That section provides: "It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...." Included in the definition of the term "firearm," found at 26 U.S.C. § 5845(a), are any "shotgun having a barrel or barrels of less than 18 inches in length," *id.* § 5845(a)(1), and "any other weapon, as defined in subsection (e) [of section 5845]," *id.* § 5845(a)(5).

The indictment specifically charged Moore with " 'unlawfully and knowingly possess[ing] a firearm, that is, *a sawed-off 12–gauge shotgun* ... which was not registered ... as required by ... § 5861(d)....' " *Id.* at 1257 (Widener, J., dissenting) (emphasis added). "The weapon introduced at trial, however, was certified to be a '[f]irearm made by inserting a 11 inch piece of galvanized pipe into a barrel of flare gun and welding same with solder. The pipe is of the size that will chamber a 12 gauge shotgun shell.' [sic]" *Id.* at 1256. This weapon is not a "shotgun" meeting the specifications of section 5845(a)(1), but falls within section 5845(e)'s definition of "any other weapon." The district court instructed the jury that "any other weapon," as defined in section 5845(e), consti-

tuted a "firearm." *Id.* at 1257 (Widener, J., dissenting).

In short, the problem in *Moore* was that the evidence at trial established that the firearm possessed by Moore was distinct from the firearm alleged to have been possessed by Moore in the indictment. As a result, the elements underlying the crime charged and the relevant facts as alleged in the indictment differed from those introduced at trial and upon which Moore was convicted. While, as described above, a constructive amendment will often arise where, as in *Moore,* facts different from those alleged in the indictment are introduced at trial, the majority in *Moore* was able to satisfy itself that the bases of conviction were not broadened by viewing the crime with which Moore had been charged as identical to the crime of which he was convicted. Because the majority found that Moore "was in no way prejudiced by the variance," *id.,* it affirmed Moore's conviction.

A comparison of *Moore* and the instant case reveals that the error herein is far less egregious than was the error in *Moore:* while, in *Moore,* the elements of the crime for which Moore was indicted varied from those of the crime for which he was convicted and facts entirely distinct from those presented in the indictment were introduced into evidence at trial, here, as noted above, the indictment set out the elements required under both paragraphs and the evidence at trial did not extend beyond the facts alleged in the indictment.[5] Yet, we found the error in

---

charged. That, however, does not convert a variance into a constructive amendment.

We review here only for plain error. As conclusively demonstrated below in Section III, Floresca was in no way prejudiced by the failure to instruct and, therefore, the failure to instruct is not plain error. *See United States v. Childress,* 26 F.3d 498, 503–04 (4th Cir.1994); *see also United States v. Xavier,* 2 F.3d 1281, 1287 (3d Cir.1993).

5. The majority seems to view *Moore* as indistinguishable from the instant case on the basis that, in *Moore,* the majority concluded that Moore was charged with, and convicted of, "possession of an unlawful firearm," 512 F.2d at 1256, with the indictment and the proof at trial simply establishing different theories of criminality thereunder; while, in the instant case, the majority asserts that, "[b]ecause each describes a different objective of an unlawful tampering, requiring the gov-

ernment to prove a different specific intent, it is evident that Paragraphs (1) and (3) are separate crimes." *Ante,* at 710 n. 9.

Initially, I would note that it is hard to square the majority's position regarding section 1512(b)(1) and (b)(3) with *Moore*'s unambiguous holding that "possession of a shotgun" and "possession of another firearm" are not distinct crimes. First, the mere fact that Congress has chosen to use a separate statutory section to provide various theories of criminality based upon the definition of a term used in one criminal statute (as is the case with section 5861(d)) as opposed to using subdivisions of the particular criminal statute to provide alternative theories of criminality (as is the case with section 1512(b)) should not affect whether an error is a variance or a constructive amendment. Moreover, I know of no authority, nor does the majority provide any, for the proposition that a specific intent

*Moore* to be merely a variance; indeed, *Moore* has recently been described as "[a] classic example of a variance case." *Wilson v. Lindler,* 995 F.2d 1256, 1261 (4th Cir.1993) ((opinion of Hamilton, J.) ("adopt[ed]" as the opinion of the dissenting members of the en banc court in *Wilson v. Lindler,* 8 F.3d 173, 175 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1101, 127 L.Ed.2d 414 (1994))). If, indeed, *Moore* is a variance case, then, *a fortiori,* so is the one now before us.

Recognizing this, the majority can only render this "dissent's reliance on *Moore* ... misplaced" by overruling that case. *Ante,* at 710. Of course, even if *Moore* is aptly seen as a constructive amendment case, that

would not mean that the error herein was also a constructive amendment. Because, again, the error in *Moore* was more egregious, it is entirely conceivable and, indeed, logical that the error in *Moore* was a constructive amendment while the error herein is a variance.[6]

I therefore conclude that the error in this case was a variance.

### III.

A variance is fatal only if it is in some way prejudicial to the accused. *See United States v. Brewer,* 1 F.3d 1430, 1437 (4th Cir.1993); *United States v. Morrow,* 925 F.2d 779, 781 (4th Cir.1991). Otherwise, the

element is treated any differently from any other element of a crime in this regard. Indeed, other courts have, in appropriate cases, similarly viewed alternate language in a statutory scheme as defining identical crimes. *See, e.g., Jackson v. United States, supra,* 359 F.2d at 263 (statute that proscribed robbery "whether against resistance or by sudden or stealthy seizure or snatching" did not, thereby, define distinct crimes, but only identified "way[s] of committing the offense"); *United States v. Coulter,* 474 F.2d 1004, 1005 (9th Cir.) (not plain error for defendant to be convicted under 18 U.S.C. § 2113(d) of "assault[ ]" during the course of a holdup of a federally insured savings and loan association, even though indictment charged only that, in the course of the holdup, defendant "put[ ] in jeopardy the life of any person by the use of a dangerous weapon or device"; reasoned the court, "the distinction between 'putting a life in jeopardy' and 'assault' is not a difference of great magnitude"), *cert. denied,* 414 U.S. 833, 94 S.Ct. 172, 38 L.Ed.2d 68 (1973).

Even putting the foregoing aside, however, the majority's argument is entirely inapposite. The court *in Moore* found it important to view the crime with which Moore was charged in the indictment as identical to the crime of which he was convicted because, otherwise, the additional facts introduced as evidence at trial which were not alleged in the indictment *would have broadened the bases of conviction.* Here, as discussed in the text above, by contrast, the elements of both paragraphs were set out in the indictment and no facts were introduced at trial which were not alleged in the indictment. Thus, the question of whether sections 1512(b)(1) and (b)(3) constitute identical or distinct crimes is *wholly irrelevant* in this case.

6. The majority asserts that "the dissent relies in significant part on *Moore* and [*United States v. Bledsoe,* 898 F.2d 430 (4th Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990),] to determine that there was no construc-

tive amendment." *Ante,* at 710. This statement is wholly inaccurate. First, as explained in the text, while *Moore* is inconsistent with the result reached by the majority, whether *Moore* remains good law in no way affects my treatment and classification of the error in this case. Further, as compared to the error herein and the error in *Moore,* the error in *Bledsoe* was distinct and far less egregious. The defendant in *Bledsoe* was indicted for distributing cocaine "within one thousand feet of the real property comprising a public secondary school." *Id.* at 431 n. 1. At trial, the evidence established that Bledsoe had distributed cocaine within 1000 feet of a private, not a public, school. The relevant statutory provision, then found at 21 U.S.C. § 845a(a), proscribed the distribution of a controlled substance within 1000 feet of "a public or private ... secondary school." The majority in *Bledsoe* found that, because "[a]ll secondary schools are either publicly or privately controlled[,] ... the statute is violated by a sale within 1000 feet of *any* secondary school." *Id.* at 432 (emphasis in original). As a consequence, the inclusion of the phrasing "public or private" in the wording of the statute was surplusage and, so, the classification of a school within 1000 feet of which cocaine had been sold was not an essential element of the crime. Thus, even though facts had been introduced at Bledsoe's trial that had not been alleged in the indictment against him, the bases for Bledsoe's conviction were not broadened thereby. We therefore concluded that Bledsoe had suffered a variance, not a constructive amendment, which we then found to be harmless.

Even the majority recognizes that *Bledsoe* is "distinguishable on its facts" from *Moore* and the instant case. *Ante,* at 711. Despite this concession, and even though this dissent in no part draws support from the court's holding in *Bledsoe,* the majority deems it proper so to limit *Bledsoe's* value as precedent as effectively to overrule it. *See ante,* at 711.

variance, though error, is harmless. *See Brewer,* 1 F.3d at 1437; *Morrow,* 925 F.2d at 781–82.

Because the indictment here set out the elements of both paragraphs and charged facts amounting to violations of both paragraphs, it is clear that the variance in this case did not unfairly surprise Floresca. Floresca certainly had notice of the charges against him adequate enough to allow him to prepare a defense.

Further, the facts of this case indicate that Floresca cannot demonstrate prejudice, *i.e.,* that the error affected the outcome of the trial. The jury charge differs from the charge cited in the indictment only in that the charge given to the jury allowed the jury to convict Floresca under paragraph (3), while the indictment, though it charged the elements of both paragraphs, provided a citation only to paragraph (1). It is clear that Floresca cannot claim surprise resulting from the omitted citation.

Moreover, even if, as seems highly doubtful, Floresca was somehow confused by the omission of a citation to paragraph (3), that is of no moment, for the difference between the two paragraphs was completely immaterial in this case. The only person with whom the government charged Floresca with interfering was Lopez, and the evidence the government presented was that Floresca had threatened Lopez with the general intent of keeping him from cooperating with the government. Lopez testified that Floresca told him that, by cooperating with the government against Floresca, Lopez might be placed in prison or be deported. Floresca enhanced these threats by telling Lopez, according to Lopez's testimony, that, by entering into a plea bargain, he would be at the mercy of the government. Lopez also testified that Floresca made thinly-veiled threats against his son.

Based on this evidence, after the judge instructed the jury that it could find Floresca guilty of interfering with a person who might relate to a law enforcement official knowledge of commission of a federal crime, the jury found Floresca guilty. Floresca's only response to this evidence was to assert that his statements were not really threats. It is inconceivable that the jury, on the evidence presented, would have convicted Floresca for interfering with Lopez's communication to law enforcement authorities, but acquitted Floresca of interfering with Lopez's testimony at trial. Nor can Floresca point to any evidence which he would have presented to defend himself against the charge of interfering with Lopez's communication to law enforcement authorities which he did *not* present to defend himself against the charge of interfering with Lopez's trial testimony. Floresca, thus, cannot show that he was prejudiced by the district court's error and, as a result, the variance in this case was harmless.

### IV.

Even accepting the majority's characterization of the error as a constructive amendment, I disagree with the majority's result. Under *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), to demonstrate plain error under Rule 52(b), a criminal defendant must demonstrate (1) error (2) that is plain and (3) that affects substantial rights. If such a showing is made, then the court of appeals has discretion to exercise its remedial power. Exercise of this discretion turns upon a determination of whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Despite *Olano's* clear directive, the majority claims that "[i]t is an open question as to whether the absence of an objection requires further analysis when the alleged error goes to the heart of the entire judicial process." *Ante,* at 712. According to the majority, "it is by no means clear that we should" apply *Olano* here. *Ante,* at 712. The majority's position in this regard is absolutely devoid of support.[7]

The opinion in *Olano* presents the Supreme Court's interpretation of Federal Rule of Criminal Procedure 52(b). Rule 52(b) confers upon the courts of appeals the "limited power," —— U.S. at ——, 113 S.Ct. at 1776,

---

7.  Indeed, at oral argument, even Floresca conceded *Olano's* applicability.

in appropriate cases, to reverse criminal convictions based upon errors which, though plain, were forfeited by the criminal defendant below. Nothing in the language of Rule 52(b) indicates that the rule might not apply to all forfeited errors in criminal cases. It is not surprising, then, that the majority makes no claim that Rule 52(b) does not apply here. Nor does the majority claim that some other statutory provision or rule provides power, supplemental to that provided by Rule 52(b), to correct forfeited errors. Indeed, it is clear and uncontested that Rule 52(b) governs here.

The Supreme Court in *Olano* analyzed the language of Rule 52(b) and developed a practical test therefrom for courts to apply in determining whether there is reversible plain error. The very thrust of *Olano* was the development of such a test which would be applicable in all criminal cases in which a criminal defendant, on appeal, asserts a claim of error which was forfeited below. There is simply no basis for the majority's speculation that the Supreme Court might have contemplated that the test formulated in *Olano* not apply to all cases in which Rule 52(b) is implicated.[8]

It comes as no surprise then, except perhaps to the majority, that the First and District of Columbia Circuits have concluded that *Olano* controls wherever there is a forfeited error in a criminal case, even where the error in question is not susceptible to harmless error analysis. *See United States v. Washington*, 12 F.3d 1128, 1138 (D.C.Cir. 1994) (applying *Olano* analysis to a forfeited claim that a constitutionally deficient reasonable doubt instruction had been delivered; the delivery of such an instruction was found to be *per se* harmful in *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)[9]), *cert. denied*, —— U.S. ——, 115 S.Ct. 98, —— L.Ed.2d —— (1994); *United States v. Merlos*, 8 F.3d 48 (D.C.Cir. 1993) (same), *cert. denied*, —— U.S. ——, 114

S.Ct. 1635, 128 L.Ed.2d 358 (1994); *United States v. Colon–Pagan*, 1 F.3d 80 (1st Cir. 1993) (applying full *Olano* analysis in a constructive amendment case); *United States v. Lawton*, 995 F.2d 290 (D.C.Cir.1993) (same). *See also United States v. Gaudin*, 28 F.3d 943, 951–52 (9th Cir. 1994) (en banc) (applying *Olano* analysis in a case where district court's jury instruction omitted essential element of charged crime, an error which that court of appeals found to be "structural").

Although the majority is explicit only in its attempt to evade *Olano*, the fact remains that the result of its musings would be to avoid the impact of a long line of Supreme Court plain error cases predating *Olano*, as well as the plain language of Rule 52(b) itself.

## V.

I conclude, as of course I must, that Rule 52(b), *Olano*, and, indeed, all Supreme Court plain error cases are binding upon us. When one examines the ramifications of these authorities to the majority's position, it is readily understood why the majority seeks to evade them. The fact is that *Olano* and the Supreme Court cases upon which *Olano* relies are inconsistent with a *per se* plain error rule. Indeed, *Olano* itself reversed the Ninth Circuit's use of a *per se* plain error rule. *See Olano*, —— U.S. at ——, 113 S.Ct. at 1776. And, in *United States v. Young*, 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985), the Supreme Court *explicitly eschewed* a *per se* plain error rule, such as the one propounded by the majority here, stating:

A *per se* approach to plain-error review is flawed. An error, of course, must be more than obvious or readily apparent in order to trigger appellate review under Federal Rule of Criminal Procedure 52(b). Following decisions such as *United States v. Frady*, [456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982),] *United States v. Socony–Vacuum Oil Co.*, [310 U.S. 150, 60

---

8. Indeed, the fact that, as described *infra*, the Court explicitly declined to rule out the possibility that, in order for Rule 52(b) to be met, prejudice must be shown in every case, demonstrates conclusively that the Court intended and expect-

ed every other part of the *Olano* analysis to apply and be used in all Rule 52(b) cases.

9. The majority asserts that *Sullivan* is controlling here. *See ante*, at 712.

S.Ct. 811, 84 L.Ed. 1129 (1940) ], and *United States v. Atkinson,* [297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936),] federal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error not only seriously affected "substantial rights," but that it had an unfair prejudicial impact on the jury's deliberations. Only then would the court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.

## VI.

The Supreme Court could not be more unequivocal: "A *per se* approach to plain-error review is flawed." *Young,* 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14.

Undaunted, the majority purports to follow *Olano* and, amazingly, finds it entirely consistent with a *per se* rule. The majority achieves this remarkable result, which, in light of the foregoing, is logically impossible, by means of reasoning unfamiliar to Rule 52(b) jurisprudence. Indeed, while the form of the majority's analysis mimics *Olano,* the substance of its analysis is quite dissimilar from, and is, in large measure, irreconcilable with, the Supreme Court's clear directive in *Olano.*

It cannot be disputed that there was error below, of one form or another, and that such error was "plain." I question, however, whether the error satisfies *Olano's* third prong. Moreover, even if it does, it is clear that this is not a case in which we should exercise our discretion to correct the error.

### A.

*Olano's* third prong requires "that the plain error 'affec[t] substantial rights.' " This is the same language employed in Rule 52(a),

and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." —— U.S. at ——–——, 113 S.Ct. at 1777–78.

#### 1.

The majority contends that a determination of prejudice cannot be conducted in this case because "it is 'utterly meaningless' to posit that any rational grand jury *could* or *would* have indicted Floresca under Paragraph 3, because it is plain that this grand jury *did not.*" *Ante,* at —— (quoting *Sullivan v. Louisiana,* —— U.S.——, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993)). The majority, in making this statement, overlooks the fact that the grand jury *did* indict Floresca for instructing Lopez "to falsely tell [his] attorney *and the authorities* that defendant FLORESCA never gave [Lopez] the prescription for thirty (30) dosage units of phentermine," J.A. 36 (emphasis added); this is the very conduct prohibited under paragraph 3.[10]

It is possible and appropriate, then, to determine whether the outcome of Floresca's trial was affected by the error in this case. As discussed above, *supra,* in Section III, the facts of this case establish conclusively that Floresca cannot demonstrate prejudice, *i.e.,* that the error affected the outcome of the trial.

#### 2.

The majority opinion concludes that *Olano's* third prong is met because the error of constructive amendment of an indictment is not susceptible to harmless error analysis. This argument relies upon the use of the nearly identical phrasing "affect substantial rights" in subsections (a) and (b) of Rule 52.[11] If an error can never be harmless and there-

---

10. In fact, the real problem here is once again the majority's mischaracterization of the error in this case as a constructive amendment of the indictment. In a true constructive amendment case, it might well be "utterly meaningless" to query whether a grand jury could or would have indicted the defendant for certain conduct *because that conduct would, in fact, have been uncharged.*

11. Federal Rule of Criminal Procedure 52 provides:

(a) **Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) **Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

fore, under Rule 52(a), always affects substantial rights, then, the argument goes, the error must affect substantial rights under Rule 52(b) and, thus, meets *Olano*'s third prong.[12]

Although the structure of Rule 52 may suggest such an interpretation, the Court in *Olano* left this question open. *See* —— U.S. at ——, 113 S.Ct. at 1778 ("There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed.... Normally, although *perhaps* not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." (emphasis added)); *id.* at ——, 113 S.Ct. at 1779 ("Assuming *arguendo* that certain errors 'affec[t] substantial rights' independent of prejudice, the instant violation of Rule 24(c) is not such an error."). Despite this non-committal language, the majority assumes not only that the *Olano* Court intended that a showing of prejudice is not required for some class of forfeited errors, but also that the class of errors for which this is the case is the class of errors not susceptible to harmless error analysis. This is, of course, nothing more than speculation on the part of the majority; nothing in *Olano* lends support to the majority's musings.[13]

I would note that, in *United States v. Lawton, supra,* 995 F.2d 290, the District of Columbia Circuit was faced with a constructive amendment to which no objection had been lodged below. That court did not shirk, as does the majority here, its responsibility under *Olano* to determine whether the defendant was prejudiced thereby. *See* 995 F.2d at 294. *See also United States v. Gaudin, supra,* 28 F.3d at 951–52 (although the Ninth Circuit found the district court's failure to instruct the jury as to an essential element of the crime charged to be a "structural error" which *per se* affected substantial rights, the court nevertheless took account of prejudice in its *Olano* analysis, noting that, had the district court properly instructed the jury, the jury would have been faced with "a serious factual question").

### B.

The majority's largest error, however, is not its analysis of *Olano*'s third prong, but its approach to the exercise of discretion required by *Olano*. Even assuming that the first three prongs of the *Olano* test are met, the question remains as to whether the error "'seriously affects the fairness, integrity or public reputation of judicial proceedings,'" *Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555

---

12. *Olano*'s third prong requires, at least in general, a showing of prejudice. I would note that the requirement that an error "affect the substantial rights of the defendant" and one that an error "prejudice the defendant" are not coextensive. Rather, a showing of prejudice requires more than a showing merely that one's substantial rights have been affected. *See United States v. Young, supra,* 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14 ("federal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error *not only* seriously affected 'substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations" (emphasis added)). *Cf. United States v. Saro,* 24 F.3d 283, 287 (D.C.Cir. 1994) ("[U]nless we are to eradicate the need for a timely objection, in plain violation of Rule 52's distinctions, we must be materially more reluctant to find 'prejudice' in the absence of a timely objection than when the error was properly raised.").

Thus, the majority's assertion that *"Stirone ... mean[s] ...* that an inquiry into prejudice is not appropriate where a constructive amendment

has occurred," *ante,* at 712–13, is inaccurate. *Stirone* does, indeed, "mean what it says," *ante,* at 712–13. All *Stirone* says, however, is that a constructive amendment "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." 361 U.S. at 217, 80 S.Ct. at 273. It says nothing about prejudice to the defendant. Therefore, contrary to the majority's protestation, "interpreting *Olano* to require a showing of prejudice in *every* case" does not, essentially or otherwise, "overrule[ ] *Stirone,*" *ante,* at 712–13.

13. In the wake of *Olano,* we have held that an error which is susceptible to harmless error analysis must be shown to have prejudiced the result obtained at the defendant's trial in order to rise to plain error. *See United States v. Moore,* 11 F.3d 475, 481–82 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1864, 128 L.Ed.2d 486 (1994). However, we have never held that the converse of this statement, *i.e.,* that the prejudice caused by an error which is not susceptible to harmless error analysis is presumed, is a correct statement of law.

(1936)), so that we should exercise our discretionary remedial power. This question is not to be glossed over. As the Supreme Court explained, "[A] plain error affecting substantial rights does not, without more, satisfy the *Atkinson* standard, for otherwise the discretion afforded by Rule 52(b) would be illusory." ——— U.S. at ———, 113 S.Ct. at 1779.

The Supreme Court's emphasis on the *discretion* of the court of appeals to exercise its remedial power indicates that this power is equitable. It is clear, then, that, in determining whether to exercise this power, a court must consider the equities of the particular case before it.[14] *United States v. Childress,* 26 F.3d 498, 504 (4th Cir.1994). In exercising our discretionary power, we must bear in mind that Rule 52(b)

> authorizes the Courts of Appeals to correct only "particularly egregious errors," *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson,* 297 U.S., at 160, 56 S.Ct., at 392.....

Any unwarranted extension of this exacting definition of plain error would skew the Rule's "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.* [456 U.S.], at 163, 102 S.Ct., at 1592 (footnote omitted).

*United States v. Young, supra,* 470 U.S. at 15–16, 105 S.Ct. at 1046.

**1.**

A determination of whether the error in a given case is likely, if uncorrected, "seriously [to] affect[ ] the fairness, integrity or public reputation of judicial proceedings" necessarily entails an assessment of prejudice in light of the equities of the case.[15] Although a showing of prejudice does not, alone, compel such a conclusion, the absence of prejudice virtually precludes it. *See Young,* 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14; *supra* note 15.

As explained at length in Section III, *supra,* the district court's error in this case did

---

**14.** This mitigates strongly against the *per se* rule, blithely adopted by the majority, that the presence of an error that is not susceptible to harmless error analysis requires reversal as a matter of law.

**15.** The Supreme Court explained in *United States v. Young,* 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14:

> Following decisions such as *United States v. Frady; United States v. Socony-Vacuum Oil Co., supra,* and *United States v. Atkinson,* federal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error not only seriously affected "substantial rights," but that it had an unfair prejudicial impact on the jury's deliberations. Only then would the court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.

In other words, "[o]nly" upon a "find[ing] that the claimed error ... had an unfair prejudicial impact on the jury's deliberations ... [is a] court able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice," as required in order for it to be proper for us to exercise our discretionary remedial power.

Thus, the majority's description of "the desire ... to inject a prejudice component into [the final step of the *Olano*] analysis" as being "born

of reflex and not of contemplation," *ante,* at 713–14, is quite inaccurate. Rather, the *requirement* that prejudice be heavily considered in conducting this portion of the *Olano* analysis is born of *controlling, explicit Supreme Court precedent.* The majority's observation that " '[a]n error may seriously affect the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence,' " *ante,* at 713 n. 18 (quoting *Olano,* ——— U.S. at ———, 113 S.Ct. at 1779 (internal quotation marks omitted)), is, though accurate, irrelevant. A prejudice inquiry does not rest on whether the defendant is actually innocent; that an error prejudiced the defendant does not mean that the defendant is actually innocent.

I would also note the absence of support in *Olano* for the majority's suggestion that, if, in fact, prejudice under *Olano*'s third prong need not be shown as to a certain error, then consideration of prejudice under Rule 52(b)'s discretionary analysis is obviated. Any suggestions that prejudice might, in appropriate cases, be omitted from a Rule 52(b) analysis appear only in discussions of *Olano*'s third prong. *Cf. United States v. Merlos,* 8 F.3d at 51 (rejecting the notion that *Sullivan,* wherein the Court found that the delivery of a constitutionally deficient reasonable doubt instruction could never be harmless, alters the first and second *Olano* prongs in determining whether an error under *Sullivan* warrants reversal under Rule 52(b)).

not in any way prejudice Floresca. Nor is there any indication or suggestion that the error was in any way the result of deliberate actions on the part of the prosecution or the district court. In short, it is plain that "the fairness, integrity or public reputation of judicial proceedings" would not be "seriously affected" were we to decline to exercise our discretionary remedial power to correct the error in this case.

### 2.

Concerns of equity and justice do not deter the majority. Extolling technicality over fairness, *compare Childress,* 26 F.3d at 504 (declining to exercise our Rule 52(b) discretionary power to remedy "a quibbling disagreement with how the district court instructed the jury"), the majority tries to force its *per se* rule into the *Olano* analytical model. In effect, the majority asserts that constructive amendments *per se* "seriously affect the fairness, integrity or public reputation of judicial proceedings." Despite the fact that such a *per se* rule is wholly irreconcilable with the language and clear purpose of Supreme Court decisions such as *Olano, Young* and *Frady, supra,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), the majority suggests that subjecting *Stirone* errors to full *Olano* review where no objection below has been lodged both is unfair and undermines the integrity of the court system. Neither of these contentions is accurate.

Central to the majority's position is the proposition that affirmance of the conviction below would emasculate the right to indictment by a grand jury and overrule *Stirone.* See ante, at 712–14. The majority's mischaracterization of the effect of affirming Floresca's section 1512 conviction could not be more gross. Affirming the conviction herein would in no way "depriv[e] ... accused[s] of the protection of the grand jury." *Ante,* at 713–14. If an accused timely raises an objection based upon the Fifth Amendment's Grand Jury clause, the district court should consider and rule upon such objection. In light of *Stirone,* moreover, where, following timely objection, the district court erroneously fails to grant relief from a true constructive amendment of the indictment, this Court will reverse any conviction obtained below. Where, however, as here, the defendant *fails* to raise any objection below, the defendant must establish that affirmance of his conviction would " 'seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings,' " *Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392). Such a rule, contrary to the majority's suggestion, *see ante,* at 712–14, in no way overrules or even undermines *Stirone. See United States v. Thetford,* 676 F.2d 170, 180 (5th Cir.1982) (in a plain error case, distinguishing *Stirone* on the ground that, in the case under review, "[u]nlike *Stirone,* ... there was no objection to the jury instruction given" (footnote omitted)),[16] *cert. denied,* 459

---

**16.** In *Thetford,* two counts of an indictment charged the defendant Thetford with obstruction of justice in violation of 18 U.S.C. § 1510(a), which provided, in pertinent part:

> Whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force, or threat thereof to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to any criminal investigator ... [s]hall be fined not more than $5,000, or imprisoned not more than five years, or both.

The district court instructed the jury that an essential element under section 1510(a) was:

> An act by the defendant of willfully (a) endeavoring by means of intimidation and threats of force, to prevent the communication of information relating to a violation of the federal criminal laws, or (b) *inflicting bodily injury on any person on account of the giving of any*

> information relating to a violation of the federal criminal laws ....

676 F.2d at 179 (emphasis supplied by the court in *Thetford* ). Though he lodged no objection to the jury instruction given, "Thetford contend[ed] that subsection (b) of the instruction was not contained in the indictment, and that its inclusion in the submission to the jury permitted it to convict him of acts for which he was not charged." *Id.* at 180.

The Fifth Circuit rejected Thetford's reliance on *Stirone* on two grounds. First, the court of appeals noted that *Stirone* was not a plain error case. *Id.* Second, the court observed that, in *Stirone,* the court's admission of evidence establishing facts extraneous to the indictment contributed to the broadening of the bases for conviction and thereby to the creation of the constructive amendment. In Thetford's appeal, by contrast, "significantly, there was no evidence as to [the two counts in question] that could remotely be construed to support" a conviction under

U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983); *United States v. Coulter*, 474 F.2d 1004, 1005 (9th Cir.) (in plain error case, distinguishing *Stirone* on the ground that "[i]n *Stirone* an objection was made at trial"), *cert. denied,* 414 U.S. 833, 94 S.Ct. 172, 38 L.Ed.2d 68 (1973); *see also Jackson v. United States, supra,* 359 F.2d at 263 (finding no reversible plain error in a similar case, but suggesting that *Stirone* might govern "if timely objection had been made").

With this in mind, I turn to the majority's specific objections to abstaining from exercising our discretionary Rule 52(b) remedial power in all constructive amendment cases. First, the majority asserts that to "depriv[e] an accused of the protection of the grand

jury would be ... intolerably unfair." *Ante,* at 713–14. This, in the abstract, is true. However, as demonstrated just above, requiring an accused who failed below to raise an objection to a claimed constructive amendment to meet the *Olano* test does not deprive the accused of the protection of the grand jury. An accused retains below the right to object to the claimed constructive amendment. The burden which he must meet to warrant correction of the error increases [17] only by virtue of *his failure* to voice any such objection below. There is nothing "intolerably unfair" about enforcing the contemporaneous-objection rule. *See Young,* 470 U.S. at 15–16, 105 S.Ct. at 1046–47.[18]

The majority next suggests that affirmance of the conviction below would under-

---

the challenged portion of the instruction. *Id.* The court noted that "in the absence of evidence upon which the jury might have convicted on a ground not contained in the indictment, ... the [district] court's inadvertent" inclusion in its jury instructions of a charge not included in the indictment "is 'trivial, useless [or] innocuous.' " *Id.* at 180 n. 17 (quoting *Stirone,* 361 U.S. at 217, 80 S.Ct. at 273 (alteration by the court in *Thetford)).*

17. The burden, it is important to note, is not increased insurmountably. Indeed, in true constructive amendment cases, it may be that the burden will be met most of the time.

18. Although it does not spell out the argument explicitly, the majority classifies the error of constructive amendment of the indictment as a "structural defect," *ante,* at 712–14, and then relies upon the First Circuit's opinion in *United States v. Colon–Pagan, supra,* 1 F.3d 80, for the proposition that the commission below of a "structural defect" will automatically warrant the exercise of Rule 52(b) discretion, *ante,* at 714 n. 19.

Even accepting *arguendo* the premise that a constructive amendment of the indictment is a "structural defect," the majority's argument is flawed. It is true, as noted by the First Circuit in *Colon–Pagan,* 1 F.3d at 82, that the Court in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), indicated that, " '[w]ithout [certain] basic protections,' " the absence of which amount to a structural defect, " 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair.' " *Id.* at 310, 111 S.Ct. at 1265 (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)). This statement, however, taken in the context in which it was made, means only that the complete deprivation of certain "basic protections" can never constitute harmless error. As such, it is inapplicable to the present inquiry.

As discussed in the text, the notion that an increase in the burden an accused must demonstrate to warrant recognition that a "basic protection[ ]" has not been accorded as a result of the accused's forfeiture of an objection below does not amount to a deprivation of that "basic protection[ ]." The *Fulminante* quote is meant only to establish that it would be unfair to characterize the deprivation of a "basic protection[ ]" as harmless error. To whatever degree such a statement may have bearing on *Olano*'s third prong, we have now passed, it must be borne in mind, to another portion of the *Olano* analysis, a portion with respect to which the *Fulminante* quote was not intended to have bearing.

I would further note that the First Circuit in *Colon–Pagan* did not consider reliance upon the language from *Fulminante* adequate to support its conclusion of unfairness warranting exercise of Rule 52(b) remedial power. Faced with a constitutionally deficient reasonable-doubt instruction below, after reciting the *Fulminante* argument outlined above, the First Circuit observed that "common sense" indicated that "[t]he erroneous instruction permitted the jury to convict on the basis of evidence that it may have believed sufficient to justify no more than the most ordinary of decisions—not evidence that proved guilt beyond a 'reasonable doubt.' " 1 F.3d at 82. Here, of course, the analogous inquiry of whether the grand jury would have indicted Floresca for violation of 18 U.S.C. § 1512(b)(3) does not result in similar unfairness, for, in fact, the indictment herein specifically charged Floresca with intimidating Lopez with the goal of having Lopez lie to the authorities regarding Floresca's illegal activities, conduct prohibited under section 1512(b)(3). *See* discussion in Section VI.A.1, *supra. See also United States v. Gaudin, supra,* 28 F.3d at 951–52 (concluding that exercise of Rule 52(b) remedial power was justified not only because of deprivation of what the Ninth Circuit found to be the "structural error" of failing to instruct the jury as to an

mine the integrity of the federal court system by eroding the right to indictment by a grand jury and overruling *Stirone. See ante,* at 713–14. The discussion above completely discredits the premise underlying this argument and, with it, the argument itself.

Thus, subjecting constructive amendments to which objections were not lodged at the trial level to an *Olano* analysis in no way undermines the integrity of the court system. Rather, I would suggest, it is the rule adopted by the *majority,* that certain errors, namely those that are not susceptible to harmless error analysis, are always considered to be reversible plain errors as a matter of law, even where they are not objected to at trial, undermines the court system's integrity, by encouraging defense counsel to forego objecting to such errors at trial. If defense counsel's client is acquitted, he succeeds; at worst, a conviction results, and his client will be entitled to a retrial as a matter of law. This exceedingly undesirable result undermines the contemporaneous objection rule, *see Young,* 470 U.S. at 15–16, 105 S.Ct. at 1046–47, and, with it, the integrity and reputation of the court system.

At bottom, the majority overturns Floresca's conviction on a technicality. This, alone, erodes the integrity and public reputation of our court system. Worse, the majority promulgates a *per se* rule under which such technicalities will, as a matter of law, always triumph over fairness and entitle fortunate defendants to reversal. The deleterious effect of such a rule on the integrity and public reputation of the court system is sure to be even more pronounced.

### VII.

The majority elevates the harmless variance in this case to a constructive amendment of the indictment. Then, when the majority, begrudgingly, applies *Olano* to the error herein, it misconstrues and misapplies the Supreme Court's opinion; only by its gross mischaracterization of *Olano* can the majority reach the result it does, a result that truly flies in the face of fairness.

I would affirm the district court's judgment in all respects.[19] I respectfully dissent.

Circuit Judges WILKINSON, WILKINS, NIEMEYER and WILLIAMS join this dissenting opinion.

---

essential element of the crime charged, but also because, had the jury received a complete instruction, it would have been faced with "a serious factual question").

19. Floresca raises a sufficiency of the evidence challenge to his section 1512 conviction which neither I nor the majority, *see ante,* at 711 n. 11, believes to be of merit.

Floresca also challenges the district court's decision to increase his offense level pursuant to U.S.S.G. § 2J1.2(b)(1). That guideline provides for an 8–level increase "[i]f the offense involved ... threatening to cause physical injury to a person ... in order to obstruct the administration of justice...." Floresca claims that no evidence supports the court's finding that Floresca threatened to harm Lopez's son. Factual findings by the district court with regard to sentencing will not be overturned unless clearly erroneous. *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). I do not believe that the district court's findings in this regard are clearly erroneous, and would therefore reject this challenge.