**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4710

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LARRY ALLEN AIKENS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Lacy H. Thornburg, District Judge.  (CR-03-75)

Argued:  September 19, 2005          Decided:  November 9, 2005

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.  Judge Gregory wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:** Stanford Kent Clontz, Asheville, North Carolina, for Appellant.  Thomas Richard Ascik, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Larry Allen Aikens appeals his convictions in the Western District of North Carolina on drug conspiracy and firearms charges, contending that the evidence supporting those convictions is insufficient. He also asserts that he was sentenced beyond the applicable Guidelines range on two "moonshining" offenses to which he had pleaded guilty. As explained below, we affirm his conviction for drug conspiracy and conclude that any error in his sentence for moonshining was harmless. On the basis of the Government's admission of a failure of its proof on the firearms charge, we vacate that conviction and remand for dismissal of the underlying charge.

## I.

On October 7, 2003, the grand jury returned a one-count indictment against Larry Allen Aikens ("Larry" or "Larry Aikens") and his son, Lewis Darrell Aikens ("Lewis" or "Lewis Aikens"), charging them with manufacturing and possessing with intent to distribute more than 100 marijuana plants, and aiding and abetting each other in this offense, in contravention of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Subsequently, on December 2, 2003, the grand jury returned a superseding indictment, against Larry only, charging him with four offenses: (1) conspiracy with Lewis and others to manufacture and possess with intent to distribute

2

more than 100 marijuana plants, in contravention of 21 U.S.C. § 846; (2) possession of thirty-one firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (3) possession of an unregistered distilling apparatus, in contravention of 26 U.S.C. § 5601(a)(1); and (4) unlawful production of distilled spirits, in violation of 26 U.S.C. § 5601(a)(8). Both Larry's and Lewis's drug offenses were alleged to have involved the same marijuana plants, and to have occurred between approximately July 2003 and October 6, 2003.

The joint trial of Larry (on the charges lodged in the superseding indictment) and Lewis (on the charge in the original indictment) began on January 5, 2004. Prior to jury selection, Larry pleaded guilty to the third and fourth counts, i.e., the moonshining offenses. On the drug conspiracy and firearms charges against Larry, as well as the drug manufacturing and possession count against Lewis, the prosecution adduced the following evidence at trial.[1]

In late August 2003, officers of the United States Department of Agriculture Forest Service were alerted that a pilot with the North Carolina State Bureau of Investigation had spotted some suspicious cultivated sites during a flyover of the Big Knob area

---

[1]Because Larry Aikens challenges the sufficiency of the evidence supporting his convictions, we recite and review the evidence in the light most favorable to the prosecution. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

of the Pisgah National Forest in western North Carolina. In early September 2003, Forest Service officers found and began monitoring three marijuana patches in that area, within Madison County, North Carolina. The patches were accessible from the Hickory Log Branch, a trail that had once been maintained by the Forest Service. The closest patch to the trail was several hundred feet away, and tracks indicated that the trail had recently been used by an all-terrain vehicle ("ATV").

On October 3, 2003, Forest Service officers observed that the plants in the marijuana patches were heavily budded and ready for harvesting. A decision was then made to begin constant surveillance of the patches. At about eleven o'clock on the morning of October 5, 2003, two teams of officers entered the general area of the patches from different directions. Along the way, one of the teams, including Agent Harold Young, Jr., surprised what was believed to be a person or animal, causing the person or animal to flee through the woods, or to be "flushed" from the area. Subsequently, upon arriving at each of the three marijuana patches, the officers discovered that the plants had been harvested since their previous visit two days earlier. The officers also found fresh bootprints belonging to two different persons at the three patches. These bootprints were tracked to a previously undiscovered fourth marijuana patch sheltered by large poplar trees. About 250 feet from that patch (and approximately a

4

quarter- to a half-mile downhill from the other three marijuana patches), one of the officers, Claude Stribling, discovered an ATV parked on the nearby Hickory Log Branch. Stribling followed the fresh tracks of the ATV, ultimately determining that the tracks originated on Larry Aikens's property, near his residence (about two miles downhill from where the parked ATV was found).

Meanwhile, other officers monitored the ATV, in the event someone came to retrieve it. Later, Agent Young led officers to the spot where he earlier had "flushed" a person or animal, finding four duffel bags full of newly harvested marijuana nearby. One of the bags appeared to be a United States Army bag, and it was marked with Lewis Aikens's name and Social Security number.

Additional officers were then brought onto the scene, and surveillance of the ATV continued through the night. At about nine o'clock the following morning, October 6, 2003, an officer hidden alone at the site, Michael Tipton, spotted Larry and Lewis walking from the direction of the ATV tracks and approaching the ATV. Tipton overheard one of the men say to the other, "What do you think?" The other man replied, "I don't see them. Let's go on up the trail." Larry and Lewis then continued walking up the Hickory Log Branch, which led to an access point for the upper marijuana patches and the site where the duffel bags of freshly harvested marijuana had been dropped. They walked for one to two minutes,

covering about 200 feet, before they met another officer, who initiated arrest procedures.

Shortly after the arrests, the officers, including Agent Jenny Davis, asked Larry and Lewis whether the abandoned ATV belonged to either of them. First Larry, and then Lewis, responded "no." Davis had also questioned Larry and Lewis about what they were doing in the area. Larry initially indicated, with Lewis's agreement, that they were "just walking." Some twenty or thirty minutes later, as officers were leading Larry and Lewis from the area, Larry initiated a conversation about bear hunting, and stated that he and Lewis had been walking and tracking bears.

Also on the day of the arrests, officers observed that Lewis had numerous wounds on his body, consistent with cuts from greenbrier and blackberry briers found in the woods surrounding the marijuana patches. And officers found evidence indicating that the abandoned ATV belonged to Lewis — a point on which there ultimately was no dispute.

On October 7, 2003, the day following the arrests, search warrants were executed on the respective homes of Larry and Lewis, which were located less than a half-mile apart. In Larry's residence and elsewhere on his property, officers found and seized, inter alia, the following: nine revolvers, sixteen rifles, four shotguns, and two muzzle loaders; fourteen bags of marijuana; several sets of scales of the type used by illegal drug dealers,

6

including one set containing marijuana residue; and numerous plastic baggies, also of the type used by drug dealers.[2] From Lewis's property, officers recovered electronic and mechanical weighing scales, planting trays, marijuana seeds, fertilizer, and several rolls of medical tape matching that used to stake plants in the marijuana patches found in the Pisgah National Forest.

At the close of the prosecution's case-in-chief on January 7, 2004, Larry Aikens moved pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on the drug conspiracy and firearms counts. See Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). Larry contended that the Government's evidence of a drug conspiracy was insufficient, and he made a separate argument (not pursued on appeal) on the firearms charge. The court denied the motion.

Subsequently, on January 8, 2004, at the close of all of the evidence and before the jury retired, Larry renewed his Rule 29 motion. In addition to his previous contentions, Larry asserted that the firearms count should be dismissed for "lack of any evidence proving a nexus between these firearms and interstate

---

[2]During the search of Larry's property, officers also found and seized evidence supporting the two moonshining offenses to which he pleaded guilty.

7

commerce." See J.A. 633.[3]  The Government responded that, "given the fact that the jury has heard evidence of nine revolvers, sixteen rifles, four shotguns and two muzzle loaders, that it would be a question for the jury to determine based upon their reason and common sense as to whether any one of those guns would have in any way traveled in interstate commerce." Id. at 634.  The court then denied Larry's renewed Rule 29 motion.

Later on that same day, the jury returned a verdict of guilty against Larry Aikens on the drug conspiracy and firearms charges, and against his son Lewis on the drug manufacturing and possession count.  After the jury was excused, Larry again renewed his Rule 29 motion, which the court denied.  See Fed. R. Crim. P. 29(c)(1)-(2) (providing that defendant may renew motion for judgment of acquittal within seven days after guilty verdict, and court may then set aside verdict and enter acquittal).

On August 20, 2004, the court sentenced Larry Aikens to 120 months of imprisonment on the drug conspiracy and firearms convictions, and to sixty months on each of the two moonshining convictions, with all prison terms to be served concurrently. Larry has filed a timely notice of appeal.  He contends that the evidence is insufficient to sustain his convictions on the drug conspiracy and firearms charges and, thus, that the court erred in

_____

[3]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this proceeding.

8

denying his renewed Rule 29 motion. In the event that we vacate those convictions, he seeks resentencing on his moonshining offenses, based on his assertion that the sixty-month prison terms imposed by the court exceeded the applicable Guidelines range. He concedes that, if his convictions (particularly his conviction for drug conspiracy) stand, any sentencing error is harmless and resentencing is not necessary. We address, in turn, Larry's assertions with respect to, first, the sufficiency of the evidence and, second, his sentence.

II.

A.

We review de novo the denial of a Rule 29 motion for a judgment of acquittal. United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir. 2003). We must sustain a jury verdict "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). We have defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. And we "remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts

9

in the evidence presented." Id. (internal quotation marks and alteration omitted).

1.

On the drug conspiracy charge against Larry Aikens, the court instructed the jury that the prosecution was required to prove the following: that between July 2003 and October 6, 2003, an agreement was formed between two or more persons to manufacture and possess with intent to distribute a detectable quantity of marijuana; that Larry knew of the conspiracy; and that he knowingly and intentionally became a member thereof. See J.A. 652; cf. Burgos, 94 F.3d at 857 ("To prove conspiracy to possess cocaine base with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy.").[4]  Importantly, "a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced." Burgos, 94 F.3d at 857.

---

[4]The district court also instructed the jury that, if it found Larry Aikens to have been involved in a drug conspiracy, it was then to consider whether the conspiracy involved more than 100 marijuana plants, and whether "the involvement of the conspiracy with this amount of marijuana was in furtherance of the conspiracy and was either known to the defendant Larry Allen Aikens or was reasonably foreseeable to him." J.A. 652-53.

10

Viewed in the light most favorable to the Government, the evidence presented to the jury in this matter permits a finding that, sometime between October 3 and the morning of October 5, 2003, Lewis Aikens and some other person harvested many of the plants in the marijuana patches in the Pisgah National Forest. During that time period, Lewis's ATV was driven from Larry Aikens's property up the Hickory Log Branch, and parked near the lowermost patch. At about 11 o'clock on the morning of October 5, 2003, Lewis was surprised by Forest Service officers. In the course of being "flushed" by the officers, Lewis dropped four duffel bags of freshly cut marijuana and fled through the woods, sustaining multiple cuts along the way and abandoning the ATV. The following morning, on October 6, 2003, Larry (himself a marijuana dealer, as evidenced by the bagged marijuana, scales, baggies, and firearms found on his property) accompanied Lewis to the area of the marijuana patches. Larry and Lewis had reached the parked ATV, where one of them was overheard stating, "I don't see them," indicating that they were looking for the officers who had "flushed" Lewis the previous day. The speaker then suggested, "Let's go on up the trail," showing that the ATV was not the intended final destination point. Larry and Lewis then continued walking up the trail, toward an access point for the site of the abandoned duffel bags of marijuana, until they were stopped by an officer and arrested. Larry and then Lewis soon thereafter falsely

11

denied that either one of them owned the ATV.[5]  And Larry gave two different excuses as to why he and Lewis had been trekking through the area of the marijuana patches that day — first, that they were "just walking," and, second, that they were walking and tracking bears.

Larry Aikens, in this appeal, concedes that there is a significant amount of circumstantial evidence linking his son Lewis to the marijuana patches, but contends that the evidence is insufficient to sustain his own conviction for drug conspiracy.  In support of this contention, Larry asserts that the evidence fails to establish, inter alia, that he had ever been physically present in any of the marijuana patches, or that the marijuana found on his property had any relation to the marijuana being grown in those patches.  He also insists that a reasonable fact finder could only conclude that, in accompanying Lewis to the area of the marijuana patches on the morning of their arrests, his purpose was innocent: to simply help Lewis retrieve his ATV, just as any father would help his son.

_____

[5]Our good dissenting colleague asserts that "Larry Aikens denied that the ATV belonged to him" (rather than to him or his son Lewis), see post at 19-20, and therefore concludes that Larry's statement was true, see id. at 26.  In our view, however, the record does not support this conclusion.  Agent Davis testified that officers asked Larry, along with Lewis, whether the ATV "belonged to either one of them."  J.A. 163 (emphasis added).  According to Davis, "Larry was the first one to indicate.  He said no, and he shook his head and put it down."  Id.  In other words, Larry stated and indicated that neither he nor Lewis owned the ATV — an assertion that was patently false.

12

Unfortunately for Larry, however, "[c]ircumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt." Burgos, 94 F.3d at 858. And "a variety of conduct," apart from personally manufacturing or possessing the drugs in issue, "can constitute participation in a conspiracy sufficient to sustain a conviction." Id. at 859 (recognizing "that participation may assume a myriad of . . . forms, such as supplying firearms or purchasing money orders for coconspirators or permitting them to store narcotics and other contraband in one's home, or purchasing plane tickets for coconspirators" (internal citations omitted)).

Here, an agreement between Larry and Lewis to violate the federal drug laws is sufficiently established by evidence that Lewis was permitted by Larry to use his property to access the Hickory Log Branch leading to the area of the marijuana patches in the National Forest, and by evidence that Larry accompanied Lewis to that area on the morning of October 6, 2003, to retrieve the ATV and duffel bags of freshly harvested marijuana that Lewis had abandoned there the previous day. Indeed, a reasonable fact finder could disregard the theory that Larry was simply helping Lewis retrieve the ATV, because once Larry and Lewis reached the ATV, they continued walking further into the National Forest.

13

Moreover, Larry's knowledge of the conspiracy, as well as his knowing and voluntary involvement in it, are sufficiently established by evidence of Larry's conduct and guilty conscience. This evidence includes the following: that Larry was watching with Lewis for the officers who had earlier "flushed" Lewis from the area; that Larry and Lewis passed the ATV and walked toward an access point for the site where the duffel bags of marijuana had been dropped; that Larry falsely denied that he or Lewis owned the abandoned ATV; that Larry gave contradictory excuses about why he and Lewis were on their trek; and that Larry had not innocently stumbled into a marijuana cultivation scheme, as he himself was a marijuana dealer. Accordingly, the district court did not err in denying Larry's multiple requests for judgment of acquittal with respect to the drug conspiracy charge, and we affirm his conviction on that count.

2.

As for the firearms offense, the court instructed the jury that the prosecution was required to prove the following: that, as of October 6, 2003, Larry Aikens previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; that he knowingly and intentionally possessed the thirty-one firearms identified in the indictment; and that this possession was in or affecting commerce, in that the firearms had been shipped and transported in interstate or foreign commerce. See J.A. 658; see

14

also United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc).  Larry contends that the Government did not introduce any evidence that the firearms had travelled in interstate or foreign commerce.

In order to prove the requisite nexus to interstate commerce, the prosecution was obliged to adduce evidence showing, for example, that one of the firearms at issue was possessed by Larry in North Carolina but manufactured in another state.  See United States v. Crump, 120 F.3d 462, 466 & n.2 (4th Cir. 1997).  Instead, the Government contended at trial that the jury should be allowed to rely on "reason and common sense" in making a factual determination on the interstate commerce element of the firearms charge.  It concedes on appeal, however, that it "did not introduce evidence to prove the connection of [Larry] Aikens' firearms to interstate commerce," and that the firearms count thus "suffered a failure of proof."  Appellee's Br. at 22.  Accordingly, we are constrained to vacate Larry's conviction on the firearms count and remand for its dismissal.

B.

Finally, Larry Aikens asserts that the sixty-month prison term imposed by the district court on each of the moonshining counts exceeds the applicable Guidelines range, which he contends is ten to sixteen months of imprisonment for those combined offenses.

15

Larry acknowledges, however, that the prison terms for moonshining are to be served concurrently with the longer prison term imposed for drug conspiracy, i.e., the mandatory statutory minimum of 120 months of imprisonment.  See 21 U.S.C. § 841(b)(1)(B).  Larry therefore concedes that, if his conviction for drug conspiracy stands, resentencing on the moonshining counts is unnecessary. Because we have affirmed his drug conspiracy conviction, we agree that a sentencing error on the moonshining offenses, if any, is rendered harmless.

III.

Pursuant to the foregoing, we affirm Larry Aikens's conviction for drug conspiracy and conclude that any error in his sentence for moonshining was harmless.  We vacate his conviction on the firearms count and remand for its dismissal.

AFFIRMED IN PART,
VACATED IN PART, AND REMANDED

16

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's decision to affirm the drug conspiracy conviction against Larry Allen Aikens ("Larry Aikens"), as set forth in Section IIA.1. The Government admits that Larry Aikens was only charged with a plantation conspiracy to manufacture and possess with intent to distribute 100 marijuana plants cultivated in the Pisgah National Forest ("Forest").[1] Yet the record fails to show any evidence, direct or circumstantial, supporting the existence of an agreement between Larry Aikens and Lewis Darrell Aikens ("Lewis Aikens") regarding the cultivation of marijuana in the Forest. Because, in my view, the drug conspiracy conviction impermissibly relies on numerous inferential leaps and conflates several uncharged conspiracy theories, the conviction cannot stand. For this reason, I also do not view the sentencing errors as harmless and therefore dissent from Section IIB. I otherwise concur in the majority's conclusion in Section IIA.2 to vacate the firearms conviction.

I.

On September 3, 2003, United States Forest Service officers discovered three marijuana cultivation sites located in the Forest in the western region of North Carolina. Officer Claude Wilton

---

[1]I use the term "plantation" to encompass any acts related to planting, cultivating, monitoring, and harvesting the marijuana plants in the four cultivation sites located in the Forest.

17

Stribling noted that the sites had similar sizes, terraces, and cultivation techniques; they were also linked by a faint trail. On September 10, 2003, Officer Stribling further observed that four-wheeler tracks led from a trail called the Hickory Log Branch ("Hickory Log Branch trail") to a point within 300 yards of the marijuana cultivation sites.

On October 5, 2003, four officers (in teams of two) entered the area of the marijuana cultivation sites at approximately 11:00 a.m. that morning. Agent Harold Young, Jr. radioed to Officer Stribling and Agent Jenny Davis that he had "flushed somebody or someone, a bear, or either someone." J.A. 151. Agent Young radioed again to inform the officers that "he had found a human boot print, and he thought that what he had flushed was possibly human activity." Id. There was no indication that more than one person had been flushed out.

Officer Stribling and Agent Davis approached the uppermost 50-plant cultivation site and noticed that it had been freshly harvested since their prior visit. Upon discovering two distinct sets of footprints, Officer Stribling began to track them from the site down to a fourth, undiscovered marijuana cultivation site, which appeared consistent with the three other sites. While surveying the scene, Officer Stribling noticed a red Honda all-terrain vehicle ("ATV") abandoned nearby as well as fresh four-wheeler tracks. He testified that the "the trimming had been done,

18

it looked like, that day." J.A. 50. The tracks led down the Hickory Log Branch trail and appeared to have originated from Larry Aikens's house.

Meanwhile, the other officers decided to investigate the area from which Agent Young had apparently "flushed" out human activity. They headed up the trail towards the uppermost cultivation sites and found four duffel bags filled with freshly harvested marijuana. One of the bags was labeled "Aikens, Lewis D." with his Social Security number. The officers then set up surveillance near the ATV.

By 9:00 a.m. the next morning, Officer Michael Tipton was by himself continuing surveillance near the ATV. Officer Tipton saw Larry Aikens and Lewis Aikens approach the ATV. One of them said to the other, "What do you think?" J.A. 255. The other one responded, "I don't see them. Let's go on up the trail." J.A. 256, 276. Larry Aikens walked upward on the trail, while Lewis Aikens remained behind, inspecting the ATV. Both Larry Aikens and Lewis Aikens then walked over to where Agent Larry Fisher was positioned. Upon the arrival of Agent Davis and other officers at that location, the officers handcuffed and searched both men. The officers discovered an ATV key in Lewis Aikens's pocket and an ATV key in Larry Aikens's pocket.

Lewis Aikens told Officer Tipton that the ATV did not belong to him. Similarly, Larry Aikens denied that the ATV belonged to

19

him. Larry Aikens also told Agent Davis that they were just walking, a story which Lewis Aikens repeated. While the officers were leading both men out of the area on the trail, Larry Aikens struck up a conversation about bear hunting. At the same time, Officer Fisher was able to match Lewis Aikens's key with the ATV; Larry Aikens's key did not fit. Moreover, the officers seized the boots of both Aikenses and later compared the samples to a plaster cast of a bootprint found near the ATV; Agent Davis did not send the boots of Larry Aikens for further analysis because she believed that they did not match the bootprint.

On October 7, 2003, the officers obtained search warrants for the residences of Larry Aikens and Lewis Aikens. The officers noted that most of the evidence "was located in [Larry Aikens's] garage or in abandoned vehicles or in sealed barrels hidden behind his residence or hidden behind the still that we located." J.A. 171. In the woods above Larry Aikens's house, the officers found a black barrel filled with five white plastic bags containing marijuana, one black bag containing marijuana, a triple-beam scale with marijuana residue on it, and numerous plastic baggies. Immediately adjacent to the black barrel was a 55-gallon blue barrel filled with eight plastic bags of marijuana. Inside a main garage area, officers also found a gray backpack containing a set of triple-beam scales, baggies, digital scales and a .25 caliber handgun. There were no fingerprints on any of the scales.

Although the marijuana found on Larry Aikens's property was sent to a laboratory for analysis, the examining chemist could not determine whether the marijuana matched the marijuana plants found in the Forest. Moreover, other people--including Lewis Aikens--had access to Larry Aikens's property.

With respect to Lewis Aikens's property, the officers discovered an electronic scale, camouflage nets, and planting trays in his home. The officers also found marijuana seeds, fertilizer, various firearms, and medical rolling tape identical to the type used on the marijuana plants in a nearby shed.


II.

The Government and the majority admit that "[b]oth Larry's and Lewis's drug offenses were alleged to have involved the same marijuana plants, and to have occurred between approximately July 2003 and October 6, 2003." (Op. at 3 (emphasis added).)[2] However, there was insufficient evidence to sustain Larry Aikens's conspiracy conviction with respect to the marijuana plants cultivated in the Forest.

---

[2]Count One of the Superseding Indictment alleged that Larry Aikens "did knowingly and intentionally combine, conspire, confederate and agree with Lewis Aikens and others, both known and unknown to the Grand Jury, to manufacture and possess with intent to distribute marijuana, a schedule I controlled substance." J.A. 10. Count One further stated that "[s]aid offense involved more than 100 plants containing a detectable amount of marijuana." Id.

21

A.

In assessing the sufficiency of evidence, we must determine whether the jury verdict is sustained by "substantial evidence, taking the view most favorable to the Government," to support it. United States v. Pierce, 409 F.3d 228, 231 (4th Cir. 2005) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). Specifically, "substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In effect, a reviewing court may not "overturn a substantially supported verdict merely because it finds the verdict unpalatable or determines that another, reasonable verdict would be preferable." Id. Moreover, the jury, not the reviewing court, "weighs the credibility of the evidence and resolves any conflicts in the evidence presented," id., to the extent that "we assume that the jury resolved all contradictions in the testimony in favor of the Government." United States v. Sun, 278 F.3d 302, 313 (4th Cir. 2002) (citing United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998)). Nevertheless, a conviction "must be overturned if 'the evidence here could only lead to a finding of guilt by an unacceptable process of raw speculation rather than by a reasoned process of inferring guilt beyond a reasonable doubt.'" United States v.

22

Baker, 985 F.2d 1248, 1251 (4th Cir. 1993) (quoting United States v. Giunta, 925 F.2d 758, 766 (4th Cir. 1991)).

B.

To establish a drug conspiracy under Count One, the Government was required to prove the following elements beyond a reasonable doubt: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United States v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001) (citing United States v. Heckard, 238 F.3d 1222, 1229 (10th Cir. 2001)). The "'gravamen of the crime of conspiracy is an agreement to effectuate a criminal act.'" Burgos, 94 F.3d at 857 (quoting United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925 (1980)). A conspiracy is, by its nature, "clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement." Id. (internal citations omitted). As such, a conspiracy may be "proved wholly by circumstantial evidence," such as the defendant's "'relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" Id. at 858 (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.), cert. denied, 469 U.S. 1105 (1985)).

23

I disagree that any evidence, direct or circumstantial, sustains the theory that Larry Aikens and Lewis Aikens entered into a criminal enterprise with respect to the marijuana plantation. The Government asserts that the major links in the conspiracy-- e.g., the ATV tracks leading from Larry Aikens's house to the area near the marijuana cultivation sites and the appearance of the Aikenses at the ATV--support the existence of an unlawful agreement between Larry Aikens and Lewis Aikens. The majority proceeds further, speculating that Larry Aikens permitted Lewis Aikens to cross his property to access the Hickory Log Branch trail, which led to the marijuana cultivation sites, and that Larry Aikens accompanied Lewis Aikens to retrieve the duffel bags of marijuana harvested the previous day. However, there was no evidence supporting the inference that Larry Aikens was aware that Lewis Aikens had used his property to cross the Hickory Log Branch trail, much less that he had given him permission to do so for the purpose of reaching the marijuana cultivation sites. As the Government concedes, only one set of ATV tracks, which had been freshly formed the day prior to the Aikenses' arrest, appeared on the trail.

Nor was there any evidence indicating that Larry Aikens knew that Lewis Aikens intended to retrieve the duffel bags of marijuana on the day of their arrest. When the two men reached the ATV, one of them said to the other, "What do you think?" The other one responded, "I don't see them. Let's go on up the trail." Lewis

24

Aikens continued to examine the ATV, while his father began walking up the trail. The remarks exchanged between Larry Aikens and his son are innocuous and hardly establish that they were on the lookout for officers, as the majority concludes. Indeed, for this conversation to hold any probative significance, the jury must first speculate that: (1) Agent Young had flushed out a human being, specifically, Lewis Aikens, on October 5, 2003; (2) Larry Aikens was aware that Lewis Aikens had been flushed out the previous day by Forest Service officers; and (3) Larry Aikens knew that marijuana cultivation sites were hidden up above the steep hill in the Forest.

These analytical leaps amount to nothing more than inferences piled upon inferences; no unifying theory logically connects these inferences together through a "reasoned process of inferring guilt beyond a reasonable doubt." Baker, 985 F.2d at 1251 (internal quotations and citations omitted). Indeed, the Aikenses' conduct following this conversation does not support the Government's assertion that they were attempting to retrieve the discarded duffel bags. Consistent with their theory that they were walking and bear sighting, Larry Aikens and Lewis Aikens continued to walk up the trail, rather than up the hill where the duffel bags and marijuana cultivation sites were located. Even if the jury could have inferred that Larry Aikens was walking toward the duffel bags, this fact does nothing more than establish that Larry Aikens was

25

present at the scene of the crime. But, as this Circuit has stated previously, mere presence at the scene of the crime is insufficient to establish criminal liability. See United States v. Spoone, 741 F.2d 680, 686 (4th Cir. 1984). In effect, the evidence did not permit the jury to make any meaningful connection between the ATV tracks, the two Aikenses' conduct at the ATV, and the marijuana cultivation sites in the Forest. Moreover, the Government failed to adduce evidence supporting the rational conclusion that Larry Aikens and Lewis Aikens entered into an unlawful agreement with respect to the marijuana plantation scheme, a point that is surely emphasized by the fact that Lewis Aikens was never charged with conspiracy.

I further disagree with the majority's conclusion that the evidence was sufficient to establish that Larry Aikens had knowledge of the marijuana plantation conspiracy or that he knowingly and voluntarily participated in the conspiracy. First, the majority identifies the following statements made by Larry Aikens after his arrest: (1) his "false" denial that he did not own or abandon the ATV and (2) his "contradictory" excuses as to why they had been in the Forest. Op. at 14. However, Larry Aikens's claim that the ATV did not belong to him was a true statement; he said nothing else with respect to the nature of his son's ownership of the vehicle. Similarly, Larry Aikens's statements that he and his son were "just walking" and later, that they were walking and

26

tracking bears are not necessarily contradictory to the extent that they establish his criminal knowledge of any marijuana plantation scheme.

Second, the majority's conclusion that Larry Aikens must have known that he was engaged in his son's marijuana plantation scheme based on his experience as a marijuana dealer is tenuous at best. As an initial matter, the evidence does not establish that Larry Aikens was aware of the marijuana, scales, and distribution devices, since they were all found in sealed containers, hidden in abandoned vehicles and areas outside his residence where access was open to other people such as renters who entered his property. Even assuming that Larry Aikens was a marijuana dealer, the Government failed to present any evidence which would have enabled Larry Aikens to recognize the marijuana plantation scheme, much less participate in it. I simply do not believe a jury could rationally conclude that Larry Aikens--or any other marijuana dealer, for that matter--could have recognized that a marijuana plantation scheme was occurring based what Lewis Aikens did and said to him on the day of their arrest or the ATV tracks. What Lewis Aikens might have done or said in the presence of Larry Aikens with respect to the marijuana cultivation sites is rank speculation.

Finally, the Government's case appears to conflate evidence of the marijuana plantation conspiracy, the offense actually charged,

with evidence of manufacturing and possessing with intent to distribute marijuana, the offenses that could have been charged. Simply because Larry Aikens may have been a marijuana dealer does not mean that he engaged in every marijuana scheme that came his way. The Government concedes that there was no evidence connecting the marijuana found on Larry Aikens's property to Lewis Aikens or the marijuana cultivation sites in the forest.[3] Significantly, the Superseding Indictment did not charge Larry Aikens with manufacturing or possessing marijuana. Yet his conspiracy conviction appears to rest on the officers' discovery of marijuana at Larry Aikens's property, despite the fact that <u>none</u> of it related to the marijuana plantation scheme charged. Although Larry Aikens might be guilty of the distinct offenses of manufacturing or possessing with intent to distribute marijuana, a defendant cannot be "tried on charges that are not made in the indictment against him." <u>United States v. Floresca</u>, 38 F.3d 706, 711 (4th Cir. 1994) (en banc) (internal quotations and citations omitted) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). Nor can the Superseding Indictment be stretched to cover such uncharged offenses without offending notions of due process. <u>See</u> <u>United States v. Quinn</u>, 359

---

[3]Indeed, the Government initially appeared to argue at oral argument that the evidence of marijuana found on Larry Aikens's property was only admissible based on Rule 404(b) of the Federal Rules of Evidence, as opposed to being admissible as part of its case-in-chief.

F.3d 666, 672-73 (4th Cir. 2004) (noting that an indictment is sufficient where it describes the offense using the unambiguous language of the statute and gives a "statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged") (internal quotations and citations omitted).

After drawing all inferences in favor of the Government, I cannot conclude that "any rational trier of fact could have found the essential elements of [the marijuana plantation conspiracy] beyond a reasonable doubt." United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005) (internal quotations and citations omitted). At best, the Government's case rests on tenuous inferences cobbled together by raw speculation. At worst, the Government's case relies on theories that criminal liability may be predicated on mere association with criminals or criminal propensity. Surely our jurisprudence requires more than conviction based on such conjectures. Otherwise, we effectively eviscerate the "beyond reasonable doubt" standard that the Framers thought prudent to enshrine in our Constitution.

Because I conclude that the marijuana plantation conspiracy was not supported by sufficient probative facts, I therefore respectfully dissent from the majority's decision to affirm Larry Aikens's conviction under Count One.

III.

The majority does not address the sentencing errors identified by Larry Aikens, deeming them harmless because the ten-year marijuana plantation conspiracy sentence and 60-month moonshining sentences are to be served concurrently. Since I would reverse the marijuana plantation conspiracy sentence, I do not view the sentencing errors for the moonshining counts as being harmless.

We review a "district court's interpretation of the applicable sentencing guidelines de novo and its factual findings for clear error." United States v. Collins, 415 F.3d 304, 315 (4th Cir. 2005) (internal quotations and citations omitted). The Presentence Investigation Report set forth an adjusted offense level of 10 for Counts Three and Four and a criminal history category of III. Based on those calculations, the Sentencing Guidelines set forth a range of ten to sixteen months. See U.S.S.G. § 5A. Accordingly, I would vacate and remand to the district court for resentencing in accordance with United States v. Booker, 125 S. Ct. 738 (2005) and United States v. Hughes, 396 F.3d 374 (4th Cir. 2005).