**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-4995**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTONIO DEMONTA HARVEY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   Malcolm J. Howard,
District Judge.  (CR-03-88)

Argued:  October 28, 2005            Decided:  December 8, 2005

Before LUTTIG, MOTZ, and KING, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

**ARGUED:** Sue Ann Genrich Berry, BOWEN, BERRY & POWERS, Wilmington,
North Carolina, for Appellant.  Christine Witcover Dean, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Frank D. Whitney,
United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c)

PER CURIAM:

Antonio Harvey challenges his convictions and sentence for conspiracy to distribute and possess with the intent to distribute cocaine base, and related narcotics offenses. We affirm Harvey's convictions, but because his sentence violated the Sixth Amendment, vacate his sentence and remand for a resentencing.

I.

A grand jury indicted Harvey for conspiring with Torrie Hood, Ali Freeman, Benjamin Tyson, and others "known and unknown to the Grand Jury" to distribute and possess with the intent to distribute fifty grams of cocaine base (crack), beginning in September 2001 and continuing until December 2003, in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999). The indictment also charged Harvey with one count of distribution of five grams cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1999) and one count of distribution of five grams cocaine base and aiding and abetting in violation of 18 U.S.C.A. § 2 (West 2000) and 21 U.S.C.A. § 841(a)(1) (West 1999).

At trial the Government presented six witnesses who claimed to have engaged in drug transactions with Harvey. Lieutenant Michael Stevens, an undercover officer with the Duplin County, North Carolina Sheriff's Department, testified that he twice bought crack from Harvey as part of a drug investigation. Lieutenant Stevens

2

first encountered Harvey on September 25, 2001 when he was attempting to buy narcotics from Harvey's co-defendant Ali Freeman. While Lieutenant Stevens was at the residence of a confidential informant in Kinston, North Carolina, Harvey approached and asked if the lieutenant was looking to buy drugs. Lieutenant Stevens indicated that he was looking for an ounce and a half of crack. Harvey said that he would be able to help, but that it would take a few minutes to contact his source. Harvey left to make a phone call, but did not return for some time. Before Harvey returned, Freeman and Torrie Hood, who was also named in the indictment, arrived and sold an ounce and a half of crack to Lieutenant Stevens, who did not buy crack from Harvey on that occasion.

One month later, on October 12, 2001, Lieutenant Stevens targeted Harvey for a drug transaction. The lieutenant waited outside Harvey's residence until he returned and then asked if Harvey could obtain an ounce and a half of crack. After making a phone call, Harvey told Lieutenant Stevens that they had to go pick up the drugs. Harvey climbed in the back of Lieutenant Stevens' pickup truck and directed him to a different residential area of Kinston. Harvey took $1,500 from Lieutenant Stevens and obtained for him a package containing 35.2 grams cocaine base. When Lieutenant Stevens discovered that he had received approximately six grams fewer than he had paid for, he returned to Harvey's residence to demand repayment for the shortage. Harvey told the

3

lieutenant he would "do a makeup on the next transaction," meaning that he would give Stevens an extra six grams on his next purchase from Harvey.

Lieutenant Stevens bought crack from Harvey on a second occasion one year later. On September 6, 2002, the lieutenant again approached Harvey at his residence looking to buy an ounce of drugs. After placing a telephone call, Harvey told Lieutenant Stevens to go wait at a nearby house for the drugs to be delivered. While the officer waited at the second residence, Harvey and Hood approached to ask if Lieutenant Stevens "was for real about purchasing it." After five to ten minutes, Hood returned with a bag containing approximately five ounces of crack cocaine. Hood measured out 27.8 grams crack for Lieutenant Stevens, and told him that he could call Harvey if he needed to contact Hood in the future. Lieutenant Stevens reported that Hood told him that Harvey was "his man."

Hood stated that he began supplying drugs to Harvey in 1999, when Harvey was having trouble paying bills. Hood advanced Harvey an ounce of crack, which Harvey paid for three to four days later. Hood later advanced Harvey another ounce, but ceased supplying him with drugs after Harvey failed to repay Hood for that second ounce. Harvey began obtaining drugs from a person named "Black" after Hood refused to deal with him. Hood resumed supplying drugs to Harvey again in early 2001, however, when Harvey asked to buy smaller

4

quantities of crack by paying cash up front. Hood also filled orders when Harvey called and asked him to deliver a specific quantity of crack for a buyer. Hood admitted to participating in the sale to Lieutenant Stevens in September 2002. He also testified that Harvey kept a gun under the parking brake in his Jeep.

Hood's cousin Benjamin Tyson, another named co-conspirator, testified that he sold an ounce of crack to Harvey on two separate occasions in 2003. He also asserted that he used to walk by Harvey's house and talk with him about selling crack at least twice a month.

Three other persons not named in the indictment testified that they had engaged in drug transactions with Harvey. Jonothor Fields related that he sold Harvey crack in "like 2000 and 2002." Gregory Bryant said that he sold crack to Harvey in 2002. Finally, Elmer Ray Vaughn testified that he had bagged and sold drugs with Harvey in 1997 and 1998, that he had sold drugs to Harvey in 2000 and 2001, and that he sold drugs with Harvey at a fairground in 2001.

Harvey himself testified, claiming that he never used drugs. Although he admitted that he participated in the September 2001 transaction with Lieutenant Stevens, he claimed to have done so at the request of an officer named Williams. Harvey specifically contested all of the other testimony regarding his alleged

5

participation in drug transactions, including the second transaction involving Lieutenant Stevens.

The jury convicted Harvey on all three counts. The presentence investigation report calculated that Harvey conspired to distribute and possess with an intent to distribute 1,733.7 grams of cocaine base. Harvey objected to that quantity calculation, stating that he was only willing to stipulate to the quantity of drugs sold to Lieutenant Stevens -- a total of 53 grams. The district court found by a preponderance of the evidence that Harvey was responsible for over 1,500 grams, giving him a base offense level of 38. The court also imposed, over Harvey's objection, a two-level enhancement for possession of a firearm during a drug transaction. With an offense level of 40 and a criminal history category of III, Harvey's sentencing range was 360 months to life.

Harvey contested this proposed sentence, on the ground that the then mandatory federal Sentencing Guidelines were invalid. The district court overruled that objection, relying on our now-vacated opinion in United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004), vacated and remanded, 125 S. Ct. 1051 (2005). The court sentenced Harvey to 360 months on the conspiracy count, with concurrent sentences on the distribution and aiding and abetting offenses. The court then announced an alternative sentence, as suggested by

Hammoud, of 240 months. Harvey appeals, challenging both his convictions and sentence.

## II.

Harvey first contends that the Government constructively amended the conspiracy charge by introducing evidence of "a series of separate, unrelated transactions." Brief of Appellant at 14. Because Harvey did not assert this argument at trial, we review it only for plain error. United States v. Floresca, 38 F.3d 706, 711-12 (4th Cir. 1994); Fed. R. Crim. P. 52(b). For Harvey to prevail, he must establish that an error occurred, that it was plain, and that it affected his substantial rights. Id. at 712 (quoting United States v. Olano, 507 U.S. 725 (1993)). Even if Harvey makes this three-part showing, we will not exercise our discretion to notice the error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id.

Because there was no constructive amendment of the indictment in this case, Harvey can not meet even the first plain error prong. A constructive amendment occurs when "the government, through its presentation of the evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). Not every variance between the indictment and proof rises to the level

7

of a constructive amendment, however. "When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs." Id.

Harvey contends that the Government's evidence represented more than a mere variance. He argues that the Government's evidence did not prove a conspiracy, but established only that "the Defendant bought some crack from Hood and the Defendant bought some crack from Tyson." Brief of Appellant at 14. In light of this, Harvey contends that "the evidence at trial altered the charge in Count One from a single conspiracy involving Hood and Freeman and Tyson and [himself] to a series of separate, unrelated transactions." Id. This argument rests on a misunderstanding of conspiracy law.

To prove a conspiracy, the Government need show only an agreement among conspirators, that the defendant knew of the conspiracy, and that the defendant voluntarily joined the conspiracy. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996)(en banc). "[I]n contemporary drug conspiracies," the agreement element "contemplates and results in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Clearly, a jury could conclude that evidence Harvey engaged in specific drug transactions

8

proves an "agreement." Moreover, a reasonable jury could also find this evidence demonstrates the knowledge and voluntary participation elements of the crime. See, e.g., Burgos, 94 F.3d at 859. Hence, the evidence that Harvey participated in drug transactions was not evidence of a different crime, but was instead compelling evidence that Harvey agreed to, knew about, and willingly participated in a drug conspiracy.

Harvey mistakenly relies on two cases in which we found an indictment had been constructively amended. See Randall, 171 F.3d at 210; Floresca, 38 F.3d at 710. In both, the defendant was essentially convicted of a crime for which he was not charged. In Randall, although the indictment charged only that the defendant carried a gun while distributing illegal drugs, the jury was instructed that it could find him guilty based on the uncharged predicate offense of possession with intent to distribute. Randall, 171 F.3d at 203-04. Similarly, in Floresca, although the defendant was charged with violation of one portion of the witness tampering statute, the jury was presented evidence about -- and instructed on finding a violation of -- a separate part of that statute. Floresca, 38 F.3d at 709. Here, by contrast, the jury convicted Harvey of the same crime for which he was charged: conspiracy. That the conspiracy was proved through a series of

drug transactions (which, taken together, made up the conspiracy) does not mean that the jury convicted Harvey of a different crime.

## III.

Harvey next contends the district court erred by admitting evidence of prior bad acts in violation of Federal Rule of Evidence 404(b). Specifically, Harvey complains of Jonothor Fields' testimony that he sold Harvey crack in "like 2000 and 2002," Gregory Bryant's testimony that he sold crack to Harvey in 2002, and Elmer Ray Vaughn's testimony that he bagged and sold drugs with Harvey in 1997 and 1998, that he sold drugs to Harvey in 2001, and that he sold drugs with Harvey at a fair in 2001. Harvey asserts that the only purpose for this testimony was to demonstrate his criminal propensity, and thus the evidence was non-probative and prejudicial.

Because he never articulated a Rule 404(b) objection at trial, we review Harvey's evidentiary objection for plain error. Fed. R. Evid. 103(a)(1); United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). Like his constructive amendment claim, Harvey's bad acts claim cannot survive the first step of this review because no error occurred.

As a threshold matter we reject Harvey's contention that individual drug transactions are "not intrinsic" to the charged drug conspiracy. See Brief for Appellant at 19. To the contrary,

10

evidence of repeated buying and selling of drugs is inherent in the crime of conspiring to distribute narcotics and possess them with the intent to distribute.  Nor does the fact that Fields, Bryant, and Vaughn were not named conspirators make this activity extrinsic to the crime.  The indictment referred to other co-conspirators "known and unknown to the Grand Jury."

To be sure, some of these transactions occurred before the time frame covered by the indictment (2001-2003).  But "the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into 'other crimes' evidence."  United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994).  Such testimony should not be considered "other crimes" evidence if, as here, it "arose out of the same . . . series of transactions as the charged offense."  Id. (internal citation omitted).  Because these transactions were substantially identical to the conspiracy alleged in the indictment -- they occurred in the same residential areas of Kinston, involved the same controlled substance, and were close in time to the period charged -- we believe that they were part of the same series of transactions.  Thus, they were not evidence of "other crimes."

IV.

Harvey next asserts that the district court should have issued two additional jury instructions. Because his counsel did not request either instruction at trial, we review the district court's failure to offer the instructions <u>sua</u> <u>sponte</u> for plain error. <u>United States v. Brown</u>, 202 F.3d 691, 698 n.13 (4th Cir. 2000); Fed. R. Crim. P. 30(d).

A.

Harvey first argues that the district court erred in not offering a special instruction about the credibility of accomplice witnesses. He maintains that because he denied being involved in drug dealing, the court should have given a special cautionary instruction about the danger of accomplice witnesses who claimed otherwise. This argument fails.

"The general rule is that accomplice instructions are preferred when accomplices testify against defendants, due to the inherent unreliability of this testimony, <u>but the failure to give such an instruction is not reversible error</u>." <u>United States v. McCabe</u>, 720 F.2d 951, 955 (7th Cir. 1983) (emphasis added) (citing <u>Caminetti v. United States</u>, 242 U.S. 470 (1917) (refusing to overturn conviction where court failed to give requested accomplice testimony instruction)). Several circuits have recognized an exception to this general rule where "the accomplice testimony is

12

not supported by a minimum amount of corroboration." Id. at 955-56 (collecting authorities). However, we need not here decide whether we would adopt that exception because in this case there was substantial corroboration of the accomplices' testimony: namely Lieutenant Stevens' testimony and the actual drugs he purchased from Harvey.

B.

Harvey also asserts the district court erred by not instructing the jury sua sponte on the affirmative defense of "public authority." This defense allows a defendant to "seek[] exoneration based on the fact that he reasonably relied on the authority of a government official to engage in a covert activity." United States v. Fulcher, 250 F.3d 244, 253 (4th Cir. 2001). A defendant's reliance must be objectively reasonable, and the official must possess actual -- not merely apparent -- authority. Id. at 253-54. Harvey's claim of entitlement to this instruction also fails.

A defendant is only entitled to an instruction on an affirmative defense where "there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). Harvey's asserted right to this defense rests solely on his own testimony that (1) he "got the drugs because [he] helped the officer named Williams"; (2) that a "dude

13

named Tom, you know, that he couldn't do the undercover buy that might have occurred from a dude named Love. So he asked me to help him"; and that (3) the police dropped a traffic charge pending against him after he helped make a drug buy.

These unsupported assertions do not supply a jury with the basis for a finding that Harvey was objectively reasonable in relying on the actual authority of a law enforcement officer. Indeed, Harvey's own testimony casts serious doubt on his claim that he relied on a police officer's authority. He testified that he "guess[ed]" he was helping out the police, that he never prepared any reports of his participation in a drug buy, that he never got paid for helping out, and that he never even talked to Lieutenant Stevens about his undercover status -- or the fact that he was helping out -- because "[i]t was a [sic] in and out thing." Moreover, Lieutenant Stevens' testimony that Harvey offered to make up the shortage on their next transaction completely belies the notion that Harvey was acting undercover for the September 2001 transaction. Finally, there is no evidence in the record (aside from Harvey's assertion) about any officer Williams; the Government is unaware of who he is or of any involvement he had in the case.

V.

Finally, Harvey contends that he should be resentenced because the district court violated the Sixth Amendment by enhancing his sentence based on facts not alleged in his indictment or found by the jury. See United States v. Booker, 125 S. Ct. 738 (2005). Specifically, Harvey complains that the district court found him responsible for over 1,500 grams cocaine base, whereas the indictment alleged only that he was responsible for more than 50 grams. The lower, alleged quantity would have translated into an offense level of 32. See United States Sentencing Guidelines ("USSG") § 2D1.1(c)(4) (2004). For a defendant with Harvey's criminal history (category III), that would have resulted in a range of 151 to 188 months. Id., Ch. 5, Pt. A (sentencing table). Yet Harvey received a sentence of 360 months based on the larger quantity found by the court.

Because Harvey raised this objection at sentencing, we review his claim for harmless error. The Government bears the burden of showing that any error was harmless beyond a reasonable doubt. The Government does not even attempt to meet this burden. Nor could it; following our suggestion in Hammoud, 381 F.3d at 353 & n.19, the district court announced that it would have imposed a sentence of 240 months if the mandatory Guidelines were not binding.

In light of the fact that the district court enhanced Harvey's sentence based upon facts not alleged in the indictment or found by

15

the jury, the Government concedes error. We therefore vacate Harvey's sentence and remand the case to the district court for resentencing. On remand the "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." Hughes, 401 F.3d at 546. The court should then "consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a)." Id. If the court chooses to impose a sentence outside that range, "it should explain its reason for doing so." Id. at 546.

VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED.

16